

# In the Missouri Court of Appeals
## Western District

CITY OF O'FALLON, MISSOURI and ) 
CITY OF BALLWIN, MISSOURI, ) 
                Appellants, ) 
v. )      WD78067
 ) 
UNION ELECTRIC COMPANY ) 
d/b/a AMEREN MISSOURI, )      FILED: April 28, 2015
               Respondent. ) 

## APPEAL FROM THE PUBLIC SERVICE COMMISSION

### BEFORE DIVISION TWO: LISA WHITE HARDWICK, PRESIDING JUDGE, VICTOR C. HOWARD AND CYNTHIA L. MARTIN, JUDGES

The City of O'Fallon and the City of Ballwin (collectively, "Cities") appeal the Missouri Public Service Commission's order dismissing their complaint against Union Electric d/b/a Ameren Missouri ("Ameren") for failure to state a claim upon which relief could be granted. The Cities contend that the Commission had jurisdiction over their complaint and the statutory authority to grant them the relief they requested. For reasons explained herein, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

The Cities are municipal customers of Ameren who receive street lighting services. The Cities are billed pursuant to Ameren's 5(M) Street and Outdoor Area

Lighting Tariff ("5(M) Tariff") for Ameren-owned street lighting facilities. Pursuant to the 5(M) Tariff, Ameren inventories, furnishes, installs, maintains, and delivers electric service to automatically-controlled lighting fixtures. The City of O'Fallon has approximately 4444 street lights and pays over $1 million dollars per year to Ameren for its street lighting services. The City of Ballwin has approximately 2159 street lights and pays over $500,000 per year to Ameren for its street lighting services. The vast majority of the street lights serving the Cities have been in service for over ten years.

In April 2014, the Cities filed a complaint in the Commission against Ameren alleging that Ameren's tariff provisions for street lighting services and its refusal to tariff or otherwise offer the Cities the opportunity to purchase the depreciated street light fixtures were unreasonable, uneconomic, and contrary to the public interest. The Cities noted that Ameren has a different tariff, the 6(M) Tariff, for its customers who own their street lighting fixtures, and the rates for lighting services under this tariff are considerably less than the rates under the 5(M) Tariff for Ameren-owned lighting fixtures. The Cities alleged that if they, instead of Ameren, owned the street lights, their payments under the 6(M) Tariff would result in O'Fallon's saving approximately $820,000 per year in street lighting costs and Ballwin's saving approximately $400,000 per year.

The Cities further noted that paragraph 7 of the 5(M) Tariff provides for termination of the street lighting service:

**Termination**

> If customer requests in writing the termination of all or a portion of any lighting service, not paid for in advance, within three years of the installation of the lamps being terminated, or within ten years of the installation of post top luminaires, wood poles or cable being terminated, customer shall pay in advance to Company $100.00 per lamp for both the removal costs associated therewith and the loss of the remaining life value of such facilities. If said request for termination of lighting service is made after the above three and ten year in-service periods, as applicable, and customer requests a new lighting installation within twelve months after the removal of the prior terminated lighting facilities, customer shall pay the amount specified earlier in this paragraph for all facilities previously removed prior to Company making any new lighting installation.

The Cities asserted that, if they were to choose to issue termination notices pursuant to this paragraph, Ameren would incur substantial costs to remove the 6603 total street lights and additional costs if it destroyed or refurbished the removed street lights. The Cities alleged that they separately approached Ameren representatives about terminating service under the 5(M) Tariff and suggested that, instead of Ameren's removing the street lights, the Cities purchase the light fixtures for fair market value, assume maintenance and replacement of the street lights, and make future payments to Ameren for street lighting services under the 6(M) Tariff. The Cities alleged that Ameren refused to discuss the sale of its street lights to the Cities and declined to say why it refused to discuss such a sale.

In Count I of their complaint, the Cities requested that the Commission find that Ameren's refusal to sell its street lights at fair market value to them was unreasonable, uneconomic, and contrary to the public interest, and they asked the Commission to order Ameren to negotiate in good faith to sell them the street

3

lights at fair market value. In Count II, the Cities alleged that paragraph 7 of the 5(M) Tariff is unreasonable and unlawful because it does not permit a municipality, upon termination of all or a portion of its street lighting service, to purchase the lights at fair market value. Therefore, the Cities asked the Commission to order Ameren to revise and amend paragraph 7 of the 5(M) Tariff to allow any Missouri municipality the option of purchasing, *in situ*, street lights within its city limits for fair market value after ten years of service. Lastly, in Count III, the Cities requested that the Commission ask Ameren for its consent to have the Commission serve as an arbitrator in this dispute.

Ameren filed a motion to dismiss the Cities' complaint. In its motion, Ameren argued that the complaint failed to state a claim upon which relief could be granted in that it did not invoke the Commission's jurisdiction, it constituted a collateral attack on a tariff, and it sought relief that the Commission lacked the authority to grant. The Staff of the Commission filed a response agreeing with Ameren's position.

After further briefing by the parties, the Commission granted Ameren's motion to dismiss. In its order, the Commission found that it did not have jurisdiction over the Cities' complaint because: (1) by the Cities' own admission, the complaint did not concern the reasonableness of any utility rate or charge; and (2) the Cities failed to allege that Ameren violated any statute, rule order or Commission decision. Additionally, the Commission found that it lacked the authority to order Ameren to sell property that it did not wish to sell.

The Cities filed an application for rehearing. After the parties filed responses, the Commission denied the Cities' application. The Cities appeal.

Appellate review of the Commission's order is limited to determining whether the order was lawful and reasonable. *State ex rel. MoGas Pipeline, LLC v. Pub. Serv. Comm'n*, 366 S.W.3d 493, 495-96 (Mo. banc 2012). An order is lawful if the Commission acted within its statutory authority. *State ex rel. Sprint Mo., Inc. v. Pub. Serv. Comm'n*, 165 S.W.3d 160, 164 (Mo. banc 2005). An order is reasonable if it is supported by substantial, competent evidence, it is not arbitrary or capricious, and the Commission has not abused its discretion. *State ex rel. Praxair, Inc. v. Pub. Serv. Comm'n*, 344 S.W.3d 178, 184 (Mo. banc 2011). The Commission's order is presumed valid, and the party challenging the order bears the burden of proving that it is invalid. *Sprint Mo.,* 165 S.W.3d at 164.

The Cities assert that the Commission's dismissal of the complaint for failure to state a claim upon which relief can be granted was unlawful and unreasonable. "'A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition. It assumes that all of plaintiff's averments are true, and liberally grants to plaintiff all reasonable inferences therefrom.'" *State ex rel. Laclede Gas Co. v. Pub. Serv. Comm'n*, 392 S.W.3d 24, 38 (Mo. App. 2012) (citations omitted). To withstand a motion to dismiss for failure to state a claim, the facts alleged must "'meet the elements of a recognized cause of action, or of a cause that might be adopted in that case.'" *Id*. (citation omitted). We must affirm

5

the dismissal if it can be sustained on any ground supported by the motion to dismiss. *Foremost Ins. Co. v. Pub. Serv. Comm'n*, 985 S.W.2d 793, 796 (Mo. App. 1998).

**ANALYSIS**

In their sole point on appeal, the Cities contend the Commission's order dismissing their complaint was unlawful and unreasonable because the Commission had both the jurisdiction to review their complaint and the authority to grant the relief they requested. The Cities argue that, in dismissing their complaint, the Commission failed to adhere to the liberal pleading standards required by law. Because it is dispositive, we will address only the issue of whether the Commission had the authority to grant the Cities the relief they requested.

"The Commission is 'an administrative body created by statute and has only such powers as are expressly conferred by statute and reasonably incidental thereto.'" *Pub. Serv. Comm'n v. Mo. Gas Energy*, 388 S.W.3d 221, 230 (Mo. App. 2012) (citation omitted). "The Commission's authority, therefore, must come from the statutes." *Id*. "'Neither convenience, expediency or necessity are proper matters for consideration in the determination of whether or not an act of the [C]ommission is authorized by statute.'" *State ex rel. Cass County v. Pub. Serv. Comm'n,* 259 S.W.3d 544, 548 (Mo. App. 2008) (citation omitted). "If a power is not granted to the [Commission] by Missouri statute, then the [Commission] does not have that power." *MoGas Pipeline*, 366 S.W.3d at 496.

6

In Count I, the Cities asked the Commission to "order Ameren to negotiate in good faith with O'Fallon and Ballwin to establish fair market value for its street lights and offer to sell said street lights to the two cities at fair market value." In Count II, the Cities asked the Commission to "order Ameren to revise and amend Paragraph 7 . . . of Ameren's 5(M) Company-Owned Street Lighting Tariff to allow any Missouri municipality, after ten years of street lighting service, the option of purchasing, *in situ*, the street lights within its city limits at fair market value." Although the Cities requested an order in Count I and a tariff amendment in Count II, the relief sought through both the order and the tariff amendment was effectively the same: that the Commission order Ameren to sell its street lights to the Cities.

In their complaint, the Cities cited Section 393.190, RSMo Cum. Supp. 2013,[1] as authority for the Commission to "approve the transfer of property." Section 393.190.1 concerns the Commission's authority with regard to a utility's sale of its property. Specifically, the statute states that no utility can sell any part of its franchise, works, or system that is necessary or useful in the performance of its duties to the public without first securing an order from the Commission authorizing such a sale. § 393.190.1. Thus, Section 393.190 grants the Commission the statutory authority to approve a sale only where the seller has agreed to sell its property and sought the Commission's approval, because it refers

---

[1] All statutory references are to the Revised Statutes of Missouri 2000, as updated by the 2013 Cumulative Supplement.

to approval after an affirmative, voluntary act by the seller, *i.e.*, the seller's petitioning and securing the Commission's order authorizing the sale.

Rule 4 CSR 240-3.110, a Commission regulation promulgated pursuant to Section 393.190, confirms that the applicant seeking authorization for the sale of a utility's property must be the utility itself and that the sale must be voluntary. Rule 4 CSR 240-3.110 is titled "Filing Requirements for *Electric Utility Applications* for Authority to Sell, Assign, Lease or Transfer Assets." (Emphasis added.) The rule requires the applicant to provide both a copy of the contract or agreement of sale and "verification of proper authority by the person signing the application or a certified copy of resolution of the board of directors of each applicant authorizing the proposed action." 4 CSR 240-3.110(1)(B) and (C). It is axiomatic that, where the utility does not wish to sell its property, it will not file the necessary application, and there will be no contract and no approval or board resolution to attach to the application. Section 393.190 does not give the Commission the authority to order Ameren to sell its street lights to the Cities without its consent.

In their response to Ameren's motion to dismiss and in their brief on appeal, the Cities contend that Section 393.140(5) provides the Commission the authority to order Ameren to sell its street light to the Cities. Section 393.140 sets forth the Commission's general powers. Subsection (5) of Section 393.140 gives the Commission the power to examine corporations under its supervision and to "keep informed as to the methods, practices, regulations and property employed by them in the transaction of their business." If the Commission finds, after a hearing had

8

upon its own motion or upon complaint, that the corporation's rates, charges, acts, or regulations are unjust or unreasonable, Section 393.140(5) gives the Commission the power to "determine and prescribe the just and reasonable rates and charges thereafter to be in force for the service to be furnished, . . . and the just and reasonable acts and regulations to be done and observed." The Cities argue that, pursuant to this provision, the Commission could order Ameren to sell its property to the Cities if the Commission found that it was just and reasonable for Ameren to do so.

The Commission's powers are limited to those conferred by statute either expressly "'or by clear implication as necessary to carry out the powers specifically granted.'" *State ex rel. Office of Pub. Counsel & Mo. Indus. Energy Consumers v. Mo. Pub. Serv. Comm'n*, 331 S.W.3d 677, 682 (Mo. App. 2011) (quoting *State ex rel. Util. Consumers' Council of Mo. v. Pub. Serv. Comm'n*, 585 S.W.2d 41, 49 (Mo. banc 1979)). Because Section 393.140(5) does not expressly give the Commission the power to order a utility to sell its property, the Cities are essentially asserting that such power is clearly and necessarily implied in the statute. We disagree.

If Section 393.190, the statute that specifically addresses the Commission's authority regarding the sale of utility property, does not permit the Commission to order a utility to sell its property, then Section 393.140(5), a statute that does not even refer to the sale of utility property, cannot reasonably be read to confer on the Commission the authority to order a utility to sell its property. Moreover, Section

9

71.525 expressly prohibits municipalities from condemning a utility's property except under certain circumstances, none of which are present here. If Section 71.525 prohibits the Cities from taking the street lights from Ameren through the power of eminent domain, it cannot implicitly be deemed "just and reasonable" under Section 393.140(5) to order Ameren to sell the lights to the Cities without Ameren's consent.

The authority to order a utility to sell its property without its consent is simply not a power that has been implicitly read into Commission statutes. Indeed, in discussing the extent of the Commission's authority with regard to a utility's property in *State ex rel. Harline v. Pub. Serv. Comm'n*, 343 S.W.2d 177, 181 (Mo. App. 1960), this court stated that, while the Commission has the regulatory power "to correct the abuse of any property right of a public utility," it does not have the power to direct the use of a utility's property. Directing the use of a utility's property "would involve a property right in the utility," and "[t]he law has conferred no such power upon the Commission." *Id*. The court further explained:

> The utility's ownership of its business and property includes the right of control and management, subject, necessarily, to state regulation through the Public Service Commission. The powers of regulation delegated to the Commission are comprehensive and extend to every conceivable source of corporate malfeasance. Those powers do not, however, clothe the Commission with the general power of management incident to ownership. The utility retains the lawful right to manage its own affairs and conduct its business as it may choose, as long as it performs its legal duty, complies with lawful regulation and does no harm to public welfare.

*Id.* at 181-82.

10

Nevertheless, the Cities argue that the Commission has previously ordered a utility to transfer its property to customers without its consent. They note that, in *Re: Detariffing of Embedded Customers Premises Equipment owned by Independent Telephone Companies*, 90 P.U.R. 4th 428 (Dec. 8, 1987) ("*Re: Detariffing*"), the Commission ordered the transfer of ownership of customer premises equipment from independent telephone companies to their customers. Although the Commission in *Re: Detariffing* did not specifically cite Section 393.140(5) as authority to transfer ownership of the utilities' equipment, the Cities contend that the Commission implicitly relied on that statute. They argue that *Re: Detariffing* stands for the proposition that the Commission has the power to force the sale of any utility "property dedicated for public service to protect customers" and, therefore, the case serves as precedent for the Commission to order Ameren to sell its street lights to the Cities. We do not read *Re: Detariffing* so broadly.

*Re: Detariffing* was instituted to meet the Federal Communications Commission ("FCC") requirements for establishing a plan for deregulation of embedded customer premises equipment owned by independent telephone companies, which were subject to state regulation. 90 P.U.R. 4th at 430. The FCC required the Commission "to accelerate the depreciation of embedded [customer premises equipment] to ensure the telephone companies recover their investment by December 31, 1987," the FCC's date of deregulation. *Id*. at 432. The FCC also required the Commission to follow the criteria set forth in a federal case for balancing the interests of ratepayers and investors with regard to the

11

embedded customer premises equipment once it was deregulated. *Id*. The Commission found that the ratepayers bore the risk of loss of the embedded customer premises equipment and, therefore, "should be allowed whatever gain which occurs upon deregulation." *Id*. To satisfy the federal case's balancing test and ensure that the ratepayers were not charged twice for the equipment, the Commission determined that transfer of ownership of the equipment to the ratepayers was essential. *Id*. at 432-33.

In so holding, the Commission found generally that it derived its subject matter jurisdiction from Chapters 386 and 392 (telephone company general regulations). *Id*. at 433. The Commission further stated that its authority to transfer ownership of the embedded customer premises equipment was derived from "its broad discretion in establishing just and reasonable rates and the requirements placed upon the Commission by the FCC." *Id*. at 432.

The deregulation case of *Re: Detariffing* bears no resemblance to the complaint case before us. Ameren is not being deregulated pursuant to federal authority. The street lights are not being depreciated on an accelerated basis to ensure return of capital investment to the utility prior to deregulation, such that ratepayer investment must be balanced. *Re: Detariffing* is neither precedential nor instructive.

Moreover, even if the Commission's decision in this case could be interpreted as contradictory to *Re: Detariffing*, the Commission was not required to follow its prior decision. The Commission, like other administrative agencies, "is

12

not bound by *stare decisis* based on prior administrative decisions, so long as its current decision is not otherwise unreasonable or unlawful." *State ex rel. Aquila, Inc. v. Pub. Serv. Comm'n,* 326 S.W.3d 20, 32 (Mo. App. 2010). The legislature, not the Commission, sets the extent of the Commission's authority. *See Util. Consumers' Council of Mo.,* 585 S.W.2d at 54. "The mere fact that the [C]ommission has approved similar clauses in the past, or that other states permit them, is irrelevant if they are not permitted under our statute." *Id*. Because the Cities provided no statutory authority for the Commission to grant the requested relief of ordering Ameren to sell its street lights to the Cities without its consent, the Commission properly dismissed Counts I and Count II of the Cities' complaint.

In Count III of their complaint, the Cities alternatively requested that the Commission ask Ameren to consent to have the Commission serve as an arbitrator in this dispute. The Cities concede that, unless Ameren is willing to arbitrate, the Commission cannot order it to do so under Section 386.230. Therefore, the Commission properly dismissed Count III for failure to state claim upon which relief could be granted.

## CONCLUSION

The Commission's order dismissing the Cities' complaint is affirmed.

_____
LISA WHITE HARDWICK, JUDGE


ALL CONCUR.

13