CORRECTED:



# In the
# Missouri Court of Appeals
# Western District

| | |
|---|---|
| STAFF OF THE MISSOURI PUBLIC SERVICE COMMISSION, | ) ) ) |
| | ) **WD78507** |
| Respondent, | ) |
| | ) **OPINION FILED:** |
| v. | ) **November 17, 2015** |
| | ) |
| CONSOLIDATED PUBLIC WATER SUPPLY DISTRICT C-1 OF JEFFERSON COUNTY, MISSOURI, | ) ) ) |
| | ) |
| Appellant. | ) |

### Appeal from the Public Service Commission

Before Division One:  Anthony Rex Gabbert, Presiding Judge, Victor C. Howard, Judge and Cynthia L. Martin, Judge

Consolidated Public Water Supply District C-1 of Jefferson County, Missouri ("CPWSD") appeals from the Public Service Commission's ("Commission") report and order ("Report and Order") which concluded that CPWSD and the City of Pevely ("Pevely") violated section 247.172[1] by failing to submit to the Commission for approval a written contract addressing the provision of water services, and which ordered CPWSD

---

[1]All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.  Section 247.172 was last amended in 2007.

and Pevely to submit a territorial agreement to the Commission for approval. CPWSD argues that section 247.172 did not apply to its agreement with Pevely, and that in any event, the Commission lacked jurisdiction and statutory authority to determine whether the agreement violated section 247.172 and to order CPWSD and Pevely to submit a territorial agreement for Commission approval.

Because the Commission has no statutory authority to determine whether an agreement between a public water supply district and a municipally owned utility is unlawful and has no authority to order a public water supply district and a municipally owned utility to submit an agreement regarding the provision of water services to the Commission for approval, the Report and Order was entered in excess of the Commission's authority and is vacated.

### Factual and Procedural Background

CPWSD is a public water supply district formed pursuant to Chapter 247 for the purpose of supplying potable water to residents within its boundaries.[2] CPWSD's boundaries are located within Jefferson County.

Pevely is a city of the fourth class located in Jefferson County. Pevely provides its residents potable water as a municipal service. Pevely's municipal boundaries are located entirely within Jefferson County.

---

[2]Section 247.010 provides, in part, that the provisions of Chapter 247 "are intended to make possible, through public corporations, conveniences in the use of water, ample in quantity for all needful purposes and pure and wholesome in quality, furnished from common sources of supply to many inhabitants of our state now denied such privileges."

Pevely annexed unincorporated land into its municipal boundaries in or around 2006. As a result of this, and of earlier annexations, portions of Pevely's municipal boundaries overlap with portions of CPWSD's water service boundaries.

In 2006, CPWSD filed suit in Jefferson County, seeking to enjoin Pevely from providing water services to those areas where the two entities' boundaries overlap. On November 12, 2007, CPWSD and Pevely entered into a contract titled "Territorial Agreement Between the Consolidated Public Water Supply District No. C-1 of Jefferson County, Missouri, and the City of Pevely, Missouri" ("Territorial Agreement"). The stated purpose of the Territorial Agreement was to resolve CPWSD's lawsuit by serving as "a permanent determination as to which party shall provide water service to the areas specifically described in [the Territorial] Agreement." The Territorial Agreement stated the parties' intent "not [to] be in competition with each other for the purposes of providing water service."

The Territorial Agreement authorized Pevely to continue providing water service to "Hunters Glen subdivision, Tiara at the Abbey subdivision, and Vinyards at Bushberg subdivision." For all other areas where Pevely's boundaries overlapped with CPWSD's boundaries, Pevely "agree[d] to cease all plans to extend water service within the current geographic boundaries of [CPWSD]." According to the Territorial Agreement, "[a]ny future development which is within corporate boundaries of both [Pevely] and [CPWSD], *including the development presently known as Valle Creek Condominiums*, shall be served by [CPWSD] unless the rights to serve such development are assigned in writing

3

to [Pevely] by [CPWSD]."  (Emphasis added.)  CPWSD and Pevely agreed that "all other territory within [CPWSD's] boundaries shall remain the exclusive territory of [CPWSD]."

Although the Territorial Agreement identified Valle Creek Condominiums as an area where CPWSD would provide water service, the property was not yet connected to CPWSD's water mains.[3]  The property was connected to Pevely's water mains.  On June 30, 2008, CPWSD entered into an agreement ("Main Extension Agreement") with H and H Development Company, the developer of Valle Creek Condominiums ("Developer"). The Main Extension Agreement provided that the Developer would pay to connect Valle Creek Condominiums to CPWSD's water main.  The Main Extension Agreement contemplated that in the interim, Valle Creek Condominiums would receive water service from Pevely, though that service would be metered by CPWSD.  Though Pevely was not a party to the Main Extension Agreement, Pevely verbally agreed to continue to provide water service to Valle Creek Condominiums to permit the Developer time to connect to CPWSD's water main.  Pursuant to the Main Extension Agreement and the verbal agreement, the Developer received monthly bills for water service from CPWSD, and CPWSD reimbursed Pevely semiannually for the water provided by Pevely.

The Main Extension Agreement required the Developer to connect to CPWSD's water main by February 1, 2009, or failing that, to reach an acceptable agreement with CPWSD by March 1, 2009, to complete the project in some other manner.  In the absence of timely connection or an alternative agreement, the Main Extension Agreement

---

[3]According to the record, undeveloped land was annexed into Pevely in or around 2006 at the owner's urging prior to development of the Valle Creek Condominiums on that land.  Thus, the undeveloped property appears not to have required water service from CPWSD prior to its annexation into Pevely.

4

provided that "the water service line from Pevely's water main [would] be terminated on that date[, CPWSD's] water meters will be removed, and the Developer will make other provisions to legally serve Valle Creek Condominiums customers at that time."

The Developer did not connect to CPWSD's water main by February 1, 2009, and no alternative agreement was reached with CPWSD by March 1, 2009. CPWSD did not, however, remove its water meters, and Pevely did not take any immediate action to discontinue performance of the verbal agreement reached with CPWSD.

That changed on August 28, 2012, when Pevely accused CPWSD of being in violation of the Territorial Agreement because CPWSD had failed either to extend its service to Valle Creek Condominiums or to notify Pevely of its inability to do so. Pevely advised that it would be removing CPWSD's meters from the Valle Creek Condominiums and installing its own meters to enable direct billing of the Developer for the provision of water services. In October 2012, Pevely removed CPWSD's meters from the Valle Creek Condominiums.

On November 1, 2012, CPWSD filed suit against Pevely in Jefferson County, alleging breach of the verbal agreement to provide temporary service to Valle Creek Condominiums metered by CPWSD.[4] In April 2013, CPWSD removed Pevely's meters and reinstalled its own meters. Thereafter, CPWSD once again billed Valle Creek Condominiums directly for water service, even though the water continued to be provided through Pevely's water main. CPWSD also sent a letter to John Holborow

---

[4]This lawsuit was later dismissed without prejudice.

5

("Holborow"), the court-appointed receiver for the Developer,[5] demanding that the work contemplated by the Main Extension Agreement be complete within 180 days or water service would be terminated.

Holborow contacted the Commission. In a letter to the Commission, Holborow expressed his concerns:

> Does [CPWSD] have the right to cut service as long as all the bills are being paid[?] Is ther [sic] precedent or a law in place to block this?

> As the receiver I am charged with protecting, preserving and managing the asset. What do I need to do to prevent [CPWSD] from disconnecting the water service? Is there a dispute or claim we can file to prevent this form [sic] occurring?

> Obviously, there is no developer and no promise of a future developer at this point, and there is no money to install the pipe as [CPWSD] want[s] us to do.

In investigating Holborow's letter, the Staff of the Missouri Public Service Commission ("PSC Staff") learned about the Territorial Agreement which had never been submitted to the Commission for approval.

The PSC Staff filed a complaint with the Commission against CPWSD and Pevely on July 19, 2013. The complaint alleged that the Territorial Agreement was subject to the requirements of section 247.172, and that CPWSD and Pevely violated the statute by failing to submit the Territorial Agreement to the Commission for approval. The complaint sought declarations to that effect and the imposition of penalties. CPWSD and Pevely filed a joint motion to dismiss the complaint for lack of jurisdiction, which the Commission denied. Following an evidentiary hearing and briefing from the parties, the

---

[5]The Developer defaulted on loans secured by the Valle Creek Condominiums and was placed into court-supervised receivership in August 2012.

Commission issued its Report and Order. The Report and Order declared CPWSD and Pevely to have violated section 247.172; ordered CPWSD and Pevely to "submit a territorial agreement for Commission approval no later than February 27, 2015;" and directed PSC Staff to notify the Commission "so that the Commission may consider further action" should CPWSD and Pevely fail to do so. Pevely filed a notice of its intention to comply with the Report and Order, but CPWSD filed an application for rehearing. The Commission denied CPWSD's request for rehearing.

CPWSD appeals.

## Standard of Review

When considering a challenge to an order by the Commission, we presume the Commission's order was valid so that the appellant has the burden of proving the order's invalidity. *Big River Tel. Co. v. Sw. Bell Tel. Co.*, 440 S.W.3d 503, 508 (Mo. App. W.D. 2014). Appellate review of an order by the Commission requires consideration of a two-prong test: (1) whether the Commission's order was lawful; and (2) whether the Commission's order was reasonable. *In re Verified Application & Petition of Liberty Energy Corp.*, 464 S.W.3d 520, 524 (Mo. banc 2015). We do not reach the issue of reasonableness of the Commission's order unless we conclude that the order was lawful. *Id.* "The lawfulness of the [Commission's] order is determined by whether statutory authority for its issuance exists, and all legal issues are reviewed *de novo*." *Id.* The Commission's order is deemed reasonable if it "(1) is supported by competent and substantial evidence upon the whole record; (2) is not arbitrary or capricious; and (3)

7

does not constitute an abuse of the PSC's discretion." *Big River Tel. Co.*, 440 S.W.3d at 508-09.

## Analysis

CPWSD asserts four points on appeal. Points one and two argue that section 247.172 does not apply to the Territorial Agreement because the statute only applies to an agreement to displace competition involving the provision of water services outside a water service provider's geographic boundaries, and even then, only when a water corporation subject to regulation by the Commission is a party to the agreement. Points three and four argue that even assuming the Territorial Agreement was within the intended scope of section 247.172, the Commission was nonetheless without jurisdiction or statutory authority to entertain the PSC Staff's complaint under either section 247.172 or section 386.390.

Because discussion of the Commission's statutory authority is dispositive of this appeal, we first address points three and four. In addressing the merits of these points, we assume *arguendo*, without deciding, that the Territorial Agreement is a territorial agreement subject to the provisions of section 247.172.

*The Commission's Limited Authority To Approve Territorial Agreements Does Not Extend to Declaring or Remediating Violations of Section 247.172.4*

In its third point relied on, CPWSD asserts that neither section 247.172 nor section 386.190 grants the Commission statutory authority to determine whether the Territorial Agreement was unlawful because it had not been approved by the Commission, or to order CPWSD and Pevely to submit "a territorial agreement" for Commission approval.

8

According to CPWSD, section 247.172 extends no authority to the Commission to hear complaints about territorial agreements that were not first approved by the Commission, and neither CPWSD nor Pevely is a "corporation" as that term is used in section 386.390.1, a statute which addresses the Commission's authority to hear complaints. In its fourth point relied on, CPWSD argues that *if* the Territorial Agreement was within the scope of section 247.172 (the subject of points one and two on appeal), the failure to secure Commission approval of the Territorial Agreement as a condition of its effectiveness rendered the agreement void *ab initio*, leaving the Commission with no authority to entertain a complaint about the Territorial Agreement, or to order CPWSD and Pevely to submit some other territorial agreement for approval. Both points require us to address the extent of the Commission's statutory authority over the regulation of municipally owned utilities and public water supply districts.

As a creature of statute, the Commission "only has the power granted to it by the Legislature and may only act in a manner directed by the Legislature or otherwise authorized by necessary or reasonable implication." *Evans v. Empire Dist. Elec. Co.*, 346 S.W.3d 313, 318 (Mo. App. W.D. 2011). "Neither convenience, expediency or necessity are proper matters for consideration in the determination of whether or not an act of the Commission is authorized by statute." *City of O'Fallon v. Union Elec. Co.*, 462 S.W.3d 438, 442 (Mo. App. W.D. 2015). "If a power is not granted to the Commission by Missouri statute, then the Commission does not have that power." *Id.*

The Commission's statutory authority is primarily expressed in Chapters 386 and 393. Though provisions within Chapters 386 and 393 have purported to grant the

9

Commission the authority to regulate and control municipalities in their manufacture, distribution, supply, and transmission of utilities, and in fixing the rates to be charged therefor, the Supreme Court long ago declared that the Commission does not have this power. *See Forest City v. City of Oregon*, 569 S.W.2d 330, 332-33 (Mo. App. 1978) (citing *City of Columbia v. State Pub. Serv. Comm'n*, 43 S.W.2d 813 (Mo. 1931); *State ex rel. Union Elec. Light & Power Co. v. Pub. Serv. Comm'n*, 62 S.W.2d 742 (Mo. 1933); *State ex rel. City of Sikeston v. Pub. Serv. Comm'n*, 82 S.W.2d 105 (Mo. 1935)). The Supreme Court's rationale extends by logical implication to public water supply districts, which are "municipal corporations" in the broad sense of the word. *See State ex rel. Halferty v. Kansas City Power & Light Co*., 145 S.W.2d 116, 122 (Mo. 1940) (holding that a public water supply district is a "'municipal corporation' in the broad sense sometimes attributed to that term"). Thus, although section 386.250(3) provides that the Commission's "jurisdiction, supervision, powers and duties" extends "[t]o all water corporations," "water corporations" do not include municipally owned utilities or public water supply districts either expressly or by reasonable implication. *See Forest City*, 569 S.W.2d at 332-33.

Although the Commission's statutory authority is primarily addressed in Chapters 386 and 393, there are other statutes which provide the Commission with additional limited authority. One such statute is section 247.172.

Section 247.172 appears in Chapter 247, a chapter addressing public water supply districts. Section 247.172.1 provides:

10

Competition to sell and distribute water, as between and among public water supply districts, water corporations subject to public service commission jurisdiction, and municipally owned utilities[6] may be displaced by written territorial agreements, but only to the extent hereinafter provided for in this section.

Section 247.172.2 requires territorial agreements to:

[S]pecifically designate the boundaries of the water service area of each water supplier subject to the agreement, any and all powers granted to a public water supply district by a municipality, pursuant to the agreement, to operate within the corporate boundaries of that municipality, notwithstanding the provisions of sections 247.010 to 247.670 to the contrary, and any and all powers granted to a municipally owned utility, pursuant to the agreement, to operate in areas beyond the corporate municipal boundaries of its municipality.

Section 247.172 thus generally recognizes that under certain circumstances, water service providers can enter into territorial agreements to "displace competition"[7] with respect to the provision of water service to particular geographic areas.

Though water service providers are not required to enter into section 247.172 territorial agreements, should they mutually consent to do so, the Commission is granted *limited* authority over the agreements in three circumstances:

Section 247.172.3 provides that "[w]here the parties cannot agree upon the boundaries of the water service areas that are to be set forth in the

---

[6]CPWSD's second point relied on argues that the Commission has no authority over territorial agreements unless a water corporation subject to the Commission's jurisdiction is a party to the agreement. In other words, CPWSD argues that an agreement between only a public water supply district and a municipally owned utility can never fall within the scope of section 247.172.1. This argument is problematic, however, given section 247.172.6, which provides that a Commission-approved territorial agreement will not "affect or diminish the rights and duties of any water supplier not a party to the agreement," including "any water corporation which is . . . subject to the jurisdiction, control and regulation of the [C]ommission." Section 247.172.6 appears to contemplate territorial agreements without a regulated water corporation as a party. Because we resolve this case on the basis of the Commission's lack of statutory authority, we need not further address CPWSD's argument that section 247.172 applies only to territorial agreements where a regulated water corporation is a party to the agreement.

[7]CPWSD's first point relied on argues that displacement of competition as referred to in section 247.172 occurs only where a water service provider wants to provide service outside its legal boundaries. Because we resolve this case on the basis of the Commission's lack of statutory authority, we need not further address CPWSD's argument.

[territorial] agreement, they may, ***by mutual consent of all parties involved***, petition the public service commission to designate the boundaries of the water service areas to be served by each party." (Emphasis added.) In such a case, the Commission will consider the petition using procedures applicable to the issuance of a certificate of convenience and necessity, and must determine whether its designated water service areas are "in the public interest."

Section 247.172.4 provides that "***[b]efore becoming effective***, ***all territorial agreements entered into under the provisions of this section***, including any subsequent amendments to such agreements, . . . ***shall receive the approval of the public service commission*** by report and order." (Emphasis added.) In such a case the Commission will consider an application for approval using procedures applicable to the issuance of a certificate of convenience and necessity. And the Commission may approve an application submitted pursuant to section 247.172.4 if the mutually agreed water service areas are "not detrimental to the public interest." Section 247.172.5.

Section 247.172.7 provides that "[t]he commission shall have jurisdiction to ***entertain and hear complaints involving any commission-approved territorial agreement***. . . . ***If the commission determines that a territorial agreement that is the subject of a complaint is no longer in the public interest, it shall have the authority to suspend or revoke the territorial agreement. If the commission determines that the territorial agreement is still in the public interest, such territorial agreement shall remain in force and effect.*** Except as provided in this section, nothing in this section shall be construed as otherwise conferring upon the commission jurisdiction over the service, rates, financing, accounting, or management of any public water supply district or municipally owned utility, or to amend, modify, or otherwise limit the rights of public water supply districts to provide service as otherwise provided by law." (Emphasis added.)

In summary, these provisions extend authority to the Commission in three discrete scenarios: (1) where competing water service providers want to enter into a territorial agreement to displace competition but cannot agree on water service areas, they can ***mutually consent*** to permitting the Commission to determine their water service areas; (section 247.172.3); (2) where competing water service providers ***mutually agreed*** upon

12

a territorial agreement, they must submit the agreement to the Commission for approval *as a condition of the agreement's effectiveness* (section 247.172.4); and (3) to entertain complaints to determine whether a *commission-approved* territorial agreement (*i.e.*, a territorial agreement generated pursuant to section 247.172.3 or approved pursuant to sections 247.172.4 and .5) remains in the public interest (section 247.172.7).

These discrete scenarios are not implicated by the present case.[8] First, Pevely and CPWSD have not mutually consented to submit determination of their water service areas to the Commission pursuant to section 247.172.3. Second, the Territorial Agreement was never submitted to the Commission for its approval, a condition of its effectiveness pursuant to section 247.172.4. And third, as a result, there is no "commission-approved territorial agreement" over which the Commission has jurisdiction to hear a complaint to determine whether the agreement remains in the public interest. Section 247.172.7.

Instead, in its Report and Order, the Commission declared that CPWSD and Pevely violated section 247.172.4 by failing to submit the Territorial Agreement to the Commission for approval. This holding necessarily required the Commission to determine that the Territorial Agreement fell within the scope of section 247.172. In addition, the Commission ordered CPWSD and Pevely to submit "a territorial agreement" for approval, or to face other consequences, presumably an order that was intended to address Holborow's concerns about CPWSD's threatened termination of water service to the Valle Creek Condominiums. As we explain, *infra*, the Commission did not have the

_____

[8]Again, in addressing the Commission's statutory authority to entertain the PSC Staff's complaint, we are assuming without deciding that the Territorial Agreement is the type of agreement contemplated by section 274.172, the subject of CPWSD's first and second points on appeal.

13

statutory authority, expressly or by reasonable implication, to entertain the PSC Staff's complaint or to enter this Report and Order. *Evans*, 346 S.W.3d at 318. (holding that the Commission "only has the power granted to it by the Legislature and may only act in a manner directed by the Legislature or otherwise authorized by necessary or reasonable implication"); *City of O'Fallon*, 462 S.W.3d at 442 ("If a power is not granted to the Commission by Missouri statute, then the Commission does not have that power.").

**(i) The Commission Did Not Have the Statutory Authority Pursuant to Section 247.172, Expressly or by Reasonable Implication, To Entertain the PSC Staff's Complaint Requesting a Declaration that CPWSD and Pevely Violated Section 247.172.4**

The PSC Staff's complaint giving rise to the Report and Order sought a declaration from the Commission that the Territorial Agreement violated section 247.172.4. As noted, section 247.172.7 addresses the Commission's jurisdiction to hear complaints, and is expressly limited to "complaints involving any *commission-approved* territorial agreement," and even then, to determining whether "commission-approved territorial agreements" remain in the public interest. (Emphasis added.) By its plain terms, section 247.172.7 does not extend authority to the Commission to entertain complaints regarding territorial agreements that were never approved by the Commission. And section 247.172.7 does not extend authority to the Commission to declare that an agreement between water service providers is an unlawful territorial agreement because it required Commission approval pursuant to section 247.172.4.

Nor can it be said that the Commission is afforded these powers by "reasonable implication." *Evans*, 346 S.W.3d at 318. Section 247.172.7 expressly provides that

14

"[e]xcept as provided in this section, ***nothing in this section shall be construed as otherwise conferring upon the commission jurisdiction over*** the service, rates, financing, accounting, or management of ***any public water supply district or municipally owned utility, or to amend, modify, or otherwise limit the rights of public water supply districts to provide service as otherwise required by law***." (Emphasis added.)

Perhaps mindful of the restraint on its authority plainly expressed in section 247.172.7, the Commission does not rely on that provision to claim authority to entertain the PSC Staff's complaint. Instead, the Commission's Report and Order concluded that section 247.172.9 granted it the authority to entertain the PSC Staff's complaint. We disagree.

Section 247.172.9 provides: "Notwithstanding any other provisions of this section, the commission may hold a hearing regarding any application, complaint or petition filed under this section upon its own motion." The Commission contends that this section authorizes it to file applications, complaints or petitions under section 247.172 on its own motion. The Commission is mistaken. Section 247.172.9 does not authorize the Commission to file applications, complaints, or petitions on its own motion. Rather, section 247.172.9 authorizes the Commission to "hold a hearing" on its own motion regarding applications, petitions, or complaints that are properly filed pursuant to section 247.172. That authority is expressed "notwithstanding any other provisions of" section 247.172 in recognition of the fact that sections 247.172.5 and .7 authorize the parties to an application, complaint, or petition to waive a hearing before the Commission by agreement. Section 247.172.9 simply empowers the Commission to require a hearing, on

15

its own motion, even if the parties to an application, complaint, or petition filed pursuant to section 247.172 have waived a hearing.

Even if we interpreted section 247.172.9 as urged by the Commission, which we do not, the Commission would remain limited in its authority to entertaining applications, complaints, or petitions addressing the matters expressed in section 247.172: (i) determining water service areas for water service providers who wish to cede the authority for this decision to the Commission by mutual consent; (ii) determining whether to approve a mutually agreed upon territorial agreement is in the public interest; and (iii) determining whether a Commission-approved territorial agreement remains in the public interest. The PSC Staff's complaint[9] did not ask the Commission to act consistent with this authority. Rather, the PSC Staff's complaint asked the Commission to declare that the Territorial Agreement was a section 247.172 "territorial agreement," and if so, to declare the agreement unlawful because it was not first submitted to the Commission for approval and to impose penalties accordingly. Section 247.172.9 does not extend this authority to the Commission no matter how it is construed.

---

[9]Assuming *arguendo* that section 247.172.9 affords the Commission the authority to file section 247.172 applications, complaints, or petitions "upon its own motion," (a construction of the statute that we reject), the Commission has delegated its authority to file matters on its behalf to the PSC Staff by regulation. *See* 4 CSR 240-2.070(1).

**(ii)  The Commission Did Not Have the Statutory Authority Pursuant to Section 386.390.1, Expressly or by Reasonable Implication, To Entertain the PSC Staff's Complaint Requesting a Declaration that CPWSD and Pevely Violated Section 247.172.4**

The Commission's Report and Order alternatively concludes that section 386.390.1 provided the Commission with the authority to entertain the PSC Staff's complaint.  We disagree.

Section 386.390.1 allows the Commission to hear complaints filed against "any corporation, person or public utility . . . in violation, or claimed to be in violation, of any provision of law."  The Commission notes that section 386.020(11) defines "corporation" as "a corporation, company, association and joint stock association or company."  The Commission argues that Pevely and CPWSD are "corporations" because section 79.010 designates a city of the fourth class like Pevely as a "body corporate" and because section 247.020 classifies public water supply districts such as CPWSD as a "political corporation."  The Commission thus argues that section 386.390.1 afforded it authority because the PSC Staff's complaint alleged that "corporations" violated a law--section 247.172.

We have already explained, however, that the provisions of Chapters 386 and 393 cannot be read or construed to grant the Commission the authority to regulate the provision of water services by municipally owned utilities or public water supply districts.  *See Forest City*, 569 S.W.2d at 332-33 (citing *City of Columbia*, 43 S.W.2d 813; *State ex rel. Union Electric Light & Power Co.*, 62 S.W.2d 742; *State ex rel. City of Sikeston*, 82 S.W.2d 105); *see also Love 1979 Partners v. Pub. Serv. Comn'n*, 715

17

S.W.2d 482, 489 (Mo. banc 1986) ("The legislature, in it [sic] wisdom, has given the Commission jurisdiction only over investor-owned utilities, and has specifically exempted public agencies . . . ."). The Commission's urged construction of the term "corporation" as used in section 386.190.1 would operate in direct contravention of settled Missouri Supreme Court precedent.

It is thus immaterial that the statutory definition of "corporation" is so broad as to technically include within its scope a "body corporate" or a "political corporation." Municipal utilities are simply not within the regulation of Chapters 386 and 393 regardless the breadth of the statutory definition of "corporation." *City of Columbia*, 43 S.W.2d at 817 (holding that municipal corporations are not included within the scope of legislature's definition of "corporation").

Lending emphasis to our conclusion is section 247.172 itself. Section 274.172 was first enacted in 1991. As noted, section 247.172.1 applies to territorial agreements as between and among competing "public water supply districts, ***water corporations subject to public service commission jurisdiction***, and municipally owned utilities." (Emphasis added.) It would have been unnecessary for the legislature to differentiate between water service providers in this fashion if public water supply districts and municipally owned utilities were "corporations," and thus "water corporations," subject to the Commission's jurisdiction.[10] To construe "corporation" in the manner urged by the Commission would

[10]Section 386.020(43) defines "public utility" to include, in pertinent part, "every . . . water corporation . . . and each thereof is hereby declared to be a public utility and to be subject to the jurisdiction, control and regulation of the commission and to the provisions of this chapter." Section 386.020(59) defines "water corporation" in pertinent part as "every corporation . . . owning, operating, controlling or managing any plant or property, dam or water supply, canal, or power station, distributing or selling for distribution, or selling or supplying for gain any

18

render the referenced language in section 247.172.1 meaningless and superfluous, a construction we will not entertain. *Am. Nat'l Prop. & Cas. Co. v. Ensz & Jester, P.C.*, 358 S.W.3d 75, 85 (Mo. App. W.D. 2011) (holding that if possible, we avoid construing a statute in a manner that will render a portion of its language meaningless (citing *In re Estate of Hough*, 457 S.W.2d 687, 692 (Mo. 1970))).

In addition, section 386.390.1 also differentiates between "corporations" and municipal entities. Section 386.390.1 describes ***who can file*** a complaint with the Commission, listing the Commission of its own motion, or "public counsel or ***any corporation*** or . . . ***any body politic or municipal corporation***." Section 386.390.1 goes on to describe ***against whom*** complaints can be filed, listing "***any corporation***, person or public utility, in violation, or claimed to be in violation of, any provision of law . . . ." (Emphasis added.) By differentiating between "corporations" and "body politics and municipal corporations" in describing who can initiate complaints, while naming only "corporations" in describing against whom complaints can be filed, the legislature evidenced its understanding that municipal corporations are not included within the statutory definition of "corporation."

Undeterred, the Commission argues that in *State ex rel. Ozark Border Electric Co-op v. Public Service Commission*, 924 S.W.2d 597 (Mo. App. W.D. 1996), this court "found no problem in the Commission hearing a complaint against a municipal corporation . . . under the term "any corporation" in section 386.390." [Respondent's

---

water." As noted, "corporation" is defined by section 386.020(11) as "a corporation, company, association and joint stock association or company."

Brief, p. 34] The Commission's reading of *Ozark Border* is in error. That case involved a territorial agreement displacing competition for the provision of electric service pursuant to section 394.312, a statute nearly identical to section 247.172, though addressing electric service and not water service. Unlike the instant case, the mutually agreed upon territorial agreement in *Ozark Border* had been submitted to the Commission for approval by the parties; one of the parties to the agreement was a regulated electric corporation; and the territorial agreement had been determined by the Commission to be in the public interest. 924 S.W.2d at 599. One year later, an electric cooperative who was not a party to the Commission-approved territorial agreement filed a complaint with the Commission claiming the agreement was no longer in the public interest. *Id.* The Commission dismissed the complaint deeming it to be in excess of the Commission's jurisdiction because: (i) there was no violation of a law alleged as required by section 386.390.1; and (ii) the complaint raised issues that did not go to whether the Commission-approved territorial agreement remained in the public interest. *Id.* On appeal, this court affirmed. *Id.* at 599-601. *Ozark Border* did not hold that a municipal corporation is subject to the Commission's jurisdiction pursuant to section 386.390.1 any time the municipal corporation is alleged to have violated a law. In fact, *Ozark Border* was not required to address over whom the Commission can exercise authority pursuant to section 386.390.1 because the essential predicate for the exercise of authority under that statute--a complaint alleging violation of a law--was not established. *Id.* If anything, *Ozark Border* underscores the limited nature of the Commission's statutory authority under section 274.172. *Ozark Border* agreed that the Commission can only hear

20

complaints pursuant to section 394.312.6 about Commission-approved territorial agreements, and even then, only if the complaint alleges a change in circumstances that calls into question whether the approved agreement remains in the public interest. *Id.*

In short, we conclude that section 386.390.1 afforded the Commission no authority to entertain the PSC Staff's complaint or to enter the Report and Order.

**(iii) CPWSD's Purported Violation of Section 247.172.4 Must Be Determined and Remediated by a Court**

Our conclusion does not leave a purported violation of section 274.172.4 without recourse. Rather, that recourse must be sought in a court of competent jurisdiction.

Section 247.172 is but one in a series of provisions in Chapter 247 addressing permissive means for lawfully divesting a public water supply district of its obligation to provide water service to territory within its legal boundaries. *See, e.g.*, section 247.031 (permitting the owners or residents of territory in a public water supply district that is not being served by the district to petition to detach the territory from the district); section 247.160.1 (providing that if territory in a public water supply district is "included by annexation within the corporate limits of a municipality," the district can enter into a contract with the municipality to "operat[e] the waterworks system within such annexed area," or to sell its water works infrastructure within the annexed area to the municipality and thus detach and exclude the annexed territory from the boundary of the district); sections 247.165.1 and .2 (providing that if territory in a public water supply district is "included by annexation within the corporate limits of a municipality," and the annexed territory "is not receiving water service from such district or such municipality at the time

21

of such annexation," the district and the municipality can enter into an agreement regarding the provision of water service to the annexed territory, and/or the detachment of the annexed area from the district); section 247.170.1 (providing that if a "city owning a waterworks or water supply system" annexes land within a public water supply district, and the city and the district cannot reach an agreement or are otherwise "unable to proceed under section 247.160," the city can seek to have the annexed land "detached and excluded" from the district by putting the matter to a public vote). Each of these *permissive* means for addressing overlapping geographic territory requires *approval* in one form or another. *See* section 247.031.1 (requiring circuit court approval); section 247.160.2 (requiring circuit court approval); sections 247.165.1 and .2 (requiring circuit court approval); section 247.170.1 (requiring a public vote).

Section 247.172 territorial agreements represent another permissive means by which the provision of water services can be addressed by mutual agreement between water service providers, albeit an agreement that does not go so far as to permanently detach territory from the boundaries of a water service provider or so far as to sell a portion of a water service provider's waterworks system to another water service provider.[11] And just as is the case with the permissive procedures specified in the statutes referenced above, a section 247.172 territorial agreement must be approved as a condition of its effectiveness, albeit by the Commission, (sections 247.172.3, .4, and .5), a

---

[11]Once again, we understand that CPWSD's first and second points on appeal challenge whether section 274.172 applies to agreements entered into solely between a public water supply district and a municipally owned utility. Because we otherwise hold that even assuming the Territorial Agreement was a section 247.172 territorial agreement, the Commission had no authority to entertain the PSC Staff's complaint or to issue its Report and Order, we need not resolve these questions.

22

legislative nod, no doubt, to the Commission's demonstrated experience in determining whether a utility service area is in the public interest through its certificate of convenience and necessity procedures.

In short, pursuant to Chapter 247, a public water supply district and a municipally owned utility have no power to privately contract to alter the public water supply district's statutory obligation to provide water service to all of the territory within its geographic boundaries *unless* the contract comports with one of the statutory procedures described in Chapter 247.[12]  In fact, it is settled law that *unless* a statutory means for relieving a public water supply district of its right to provide water service within its territory is successfully pursued, a ***municipality has no authority to provide water within the geographic boundaries of the district, and the public water supply district remains obligated and entitled to provide water service throughout its territory***.  *See Pub. Water Supply Dist. No. 1 of Butler Cnty. v. City of Poplar Bluff*, 12 S.W.3d 741, 745-46 (Mo. App. S.D. 1999) (holding that in order to provide water service in annexed areas within a public water supply district, a municipality must first comply with either section 247.160 or section 247.170 (citing *Pub. Water Supply Dist. No. 16 v. City of Buckner*, 951 S.W.2d 743, 744-45 (Mo. App. W.D. 1997); *Pub. Water Supply Dist. No. 10 of Cass County v. City of Peculiar*, 971 S.W.2d 849, 854-55 (Mo. App. W.D. 1998))); *Mathison v. Public Water Supply Dist. No. 2 of Jackson Cnty.*, 401 S.W.2d 424, 431 (Mo. 1966) (holding

---

[12]Compare *City of Harrisonville v. Public Water Supply Dist. No. 9 of Cass County*, 49 S.W.3d 225 (Mo. App. W.D. 2001), which interpreted a contract between a public water district and a city that had annexed land in the district without discussing whether the contact comported with one of the provisions of Chapter 247.  Notably, the contract at issue in that case was entered into in 1974.  Sections 247.160 and .170 were first enacted in 1949. Section 247.031 was first enacted in 1988.  Section 247.172 was first enacted in 1991.  Section 247.165 was first enacted in 2000.

that section 247.010's statement of Chapter 247's purpose reflects that "the legislature did not intend that both [a] city and [a public water supply] district distribute water in the same area at the same time"). Thus, when a public water supply district is first formed, it can include within its legal territory "cities that do not have a waterworks system." Section 247.030.1. However, after a public water supply district is formed, municipalities with or without a waterworks systems that annex land within the district's boundaries cannot displace the district's authority to provide water to the annexed land absent compliance with one of the provisions for doing so set forth in Chapter 247.

Here, a court must determine whether the Territorial Agreement lawfully relieved CWPSD of its obligation to provide water service throughout its territory by ceding some of that authority to Pevely. That inquiry will not only require a court to determine whether the Territorial Agreement is a section 247.172 "territorial agreement" but will as well require a court to determine whether the agreement otherwise qualifies (or attempts to qualify) as a lawful transaction pursuant to other provisions of Chapter 247.[13] In fact, in this case, CPWSD argued that the Territorial Agreement was a section 247.165 agreement and not a section 247.172 territorial agreement. The Commission considered and rejected this contention though it plainly had no statutory authority to do so. That the Commission was required to consider CPWSD's contention underscores the fact that the Commission lacks the statutory authority, either expressly or by reasonable implication,

_____

[13]The record is silent with respect to whether the Territorial Agreement, which was entered into to settle a lawsuit filed by CPWSD against Pevely in 2006, was approved by the court in substantial compliance with section 247.160 or section 247.165.

24

to determine whether a public water supply district and a municipality have unlawfully contracted to address the provision of water services.

Further underscoring this point is the fact that only a court can remediate the legal ramifications of an unlawful contract between a public water supply district and a municipally owned utility addressing the provision of water services. The Commission "cannot 'enforce, construe nor annul' contracts, nor can it enter a money judgment." *Wilshire Constr. Co. v. Union Elec. Co.*, 463 S.W.2d 903, 905 (Mo. 1971) (quoting *May Dep't Stores Co. v. Union Elec. Light & Power Co.*, 107 S.W.2d 41, 49 (Mo. 1937)). "Likewise, the Commission does not have the authority to do equity or grant equitable relief." *State ex rel. GS Techs. Operating Co. v. Pub. Serv. Comm'n*, 116 S.W.3d 680, 696 (Mo. App. W.D. 2003) (citing *Am. Petroleum Exch. v. Pub. Serv. Comm'n*, 172 S.W.2d 952, 955 (Mo. 1943)). Moreover, if a contract is determined to be a section 247.172 territorial agreement which required, but did not receive, the Commission's approval as a condition of its effectiveness, then the agreement is void *ab initio* and not merely voidable. *See, e.g.*, *Thies v. St. Louis Cnty.*, 402 S.W.2d 376, 380 (Mo. 1966) (holding that contract involving public entity that does not comply with statutory requirements for its formation is void *ab initio* and cannot be later rendered valid despite performance); *Kindred v. City of Smithville*, 292 S.W.3d 420, 424 (Mo. App. W.D. 2009) (holding that contract with municipality that does not comply, or substantially comply, with statutory requirements that are conditions to its effectiveness is void *ab initio* and not merely voidable). In such a circumstance, neither a court nor the Commission would

25

have the authority to retroactively approve the void territorial agreement or to retroactively legitimize its unlawful performance. *Thies*, 402 S.W.2d at 380.

In this case, a court must determine whether the Territorial Agreement, the Main Extension Agreement, and the corresponding verbal agreement between CPWSD and Pevely unlawfully delegated some of CPWSD's statutory water service obligations to Pevely. And a court must redress Holborow's complaint that CPWSD is improvidently relying on one or more of the aforesaid agreements to threaten termination of water service to Valle Creek Condominiums despite the property's timely payment of its water bills.[14]

In summary, and for the reasons herein explained, the Commission had no statutory authority to entertain the PSC Staff's complaint, or to issue its Report and Order finding, as alleged by the complaint, that CPWSD and Pevely violated section 247.172 by failing to submit the Territorial Agreement to the Commission for approval as a condition of its effectiveness.

### (iv) The Commission Did Not Have the Statutory Authority, Expressly or by Reasonable Implication, To Order CPWSD and Pevely To Submit a Territorial Agreement for Commission Approval

The Commission's Report and Order also ordered CPWSD and Pevely to submit "a territorial agreement" to the Commission for its approval or to face other recourse by the Commission. On appeal, the Commission makes no attempt to defend this order, which plainly exceeded the Commission's statutory authority. We have already

---

[14]We express no opinion about the applicability of section 247.031 to this scenario, a statute which permits, in certain circumstances, the detachment of property from the geographic boundaries of a public water supply district if the property is not being provided water service by the district.

26

explained that section 247.172 does not require competing water service providers to enter into a territorial agreement. It certainly does not grant the Commission the authority to order them to do so.[15] The Commission's order directing CPWSD and Pevely to submit "*a* territorial agreement" for the Commission's approval or to face other recourse by the Commission is unlawful as it exceeds the Commission's statutory authority.

CPWSD's third and fourth points on appeal are granted. Our disposition of points three and four renders any further discussion of CPWSD's first and second points on appeal unnecessary.

### Conclusion

The Commission's Report and Order is vacated as it was entered in excess of the Commission's statutory authority.

ss//ss                         .
Cynthia L. Martin, Judge

All concur

---

[15]The Commission points out in its Brief that the Report and Order did not order CPWSD and Pevely to perform the 2007 Territorial Agreement or to submit same to the Commission for retroactive approval. For the reasons herein explained, the Commission would not have had the authority to do so.

27