**In the MATTER OF the Application of AMEREN TRANSMISSION COMPANY OF ILLINOIS for Other Relief or, in the Alternative, a Certificate of Public Convenience and Necessity Authorizing it to Construct, Install,**

Own, Operate, Maintain and Otherwise Control and Manage a 345,000–Volt Electric Transmission Line from Palmyra, Missouri, to the Iowa Border and Associated Substation Near Kirksville, Missouri

Neighbors United Against Ameren's Power Line, Appellant,

v.

Public Service Commission of Missouri and Ameren Transmission Company of Illinois, Respondents.

WD 79883

Missouri Court of Appeals, Western District.

OPINION FILED: March 28, 2017

Motion for Rehearing and/or Transfer to Supreme Court Denied April 27, 2017

Application for Transfer Denied June 27, 2017

Arturo A. Hernandez, III, Jefferson City, MO, Attorney for Appellant.

Jennifer Heintz and Curt Stokes, Jefferson City, MO, Attorneys for Respondent Public Service Commission.

Michael R. Tripp, Columbia, MO, and Eric Dearmont, St. Louis, MO, Attorneys for Respondent Ameren Transmission Company of Illinois.

Before Division IV: Mark D. Pfeiffer, Chief Judge, and Thomas H. Newton and Anthony Rex Gabbert, Judges

Mark D. Pfeiffer, Chief Judge

Neighbors United Against Ameren's Power Line ("Neighbors United") appeals from the Missouri Public Service Commission's ("PSC") conditional report and order granting Ameren Transmission Company of Illinois ("ATXI") a conditional certificate of convenience and necessity ("CCN") to construct a long-distance electric transmission line. Because the PSC has no statutory authority to grant a preliminary or conditional CCN contingent on the re- quired county commission consents being subsequently obtained, the Report and Order was entered in excess of the PSC's authority and is vacated.

### Factual and Procedural Background

ATXI is an Illinois corporation author- ized to do business in Missouri and en- gaged in the construction, ownership, and operation of interstate transmission lines that transmit electricity for the public use. It does not generate, distribute, or sell electricity to the general public or serve any retail service territory. In May 2015, ATXI applied to the PSC for a CCN au- thorizing ATXI to construct, install, oper- ate, control, manage, and maintain a new 345,000-volt (345-kV) electric transmission line running generally from Palmyra, Mis- souri, and extending westward through Marion, Shelby, Knox, and Adair counties to a new substation located near Kirksville, Missouri (the Zachary Substation), and proceeding through Schuyler County, Mis- souri, to a connection point on the Iowa border, together with a 2.2-mile 161,000- volt (161-kV) connector line from the Zachary Substation to the existing Adair substation owned by Ameren Missouri (collectively, the "Mark Twain Project" or "Project"). The 345-kV transmission line conductors will be supported primarily by single-shaft, self-supported steel pole structures 90-130 feet in height, with typi- cal spans of 850 feet, and for the majority of the route will be erected within a 150- foot right-of-way. The 161-kV transmission line conductors will also be supported pri- marily by single-shaft, self-supported steel pole structures 70-100 feet in height, with typical spans of 600 feet, and for a majori- ty of the route will be erected within a 100-foot right-of-way.

Neighbors United is a Missouri not-for- profit corporation. A majority of its mem- bers live or own property near the pro-

posed Project route. In June 2015, Neighbors United moved to intervene in ATXI's CCN case before the PSC in order to oppose ATXI's application. In July 2015, the PSC granted Neighbors United permission to intervene.

Thereafter, Neighbors United filed a motion to dismiss ATXI's application. Neighbors United argued that the PSC was constitutionally prohibited from granting the relief requested by ATXI because the proposed Project would impair the right of farmers and ranchers to engage in farming and ranching practices conferred by article I, section 35 of the Missouri Constitution, commonly referred to as the "Right to Farm Amendment." Additionally, Neighbors United argued that ATXI's application should be dismissed because ATXI did not have the requisite approvals from the county commissions of the counties its proposed transmission line would traverse as required under section 229.100 and Commission Rule 4 CSR 240–3.105(1)(D)1. The PSC denied the motion.

After an evidentiary hearing on January 25–29, 2016, the PSC issued its Report and Order on April 27, 2016, with an effective date of May 27, 2016. The PSC granted ATXI's application for a CCN to construct the Mark Twain Project, subject to certain conditions, including that the CCN was contingent upon ATXI providing certified copies of county assents for the Project from the Missouri counties of Marion, Shelby, Knox, Adair, and Schuyler.

ATXI timely applied to the PSC for rehearing and moved for reconsideration of the PSC's Order granting a CCN for the Mark Twain Project, arguing that it was unlawful and/or unreasonable for the PSC to make the CCN contingent on providing certified copies of assents from the five counties through which the Project

would be built. Neighbors United also timely applied for rehearing, arguing that filing evidence of county assent with the PSC was a *mandatory prerequisite* to the approval of an application for a CCN and that the PSC's Order violated the Right to Farm Amendment because farmland would be taken out of production and farming and ranching practices would be infringed. The PSC denied ATXI's and Neighbors United's applications for rehearing and ATXI's motion for reconsideration.

Neighbors United timely appealed.

## Standard of Review

An original order or decision of the PSC is subject to judicial review to determine: first, whether the order is lawful; and second, whether the order is reasonable. § 386.510.[1] The PSC's order is presumed valid. *Office of Pub. Counsel v. Mo. Pub. Serv. Comm'n*, 409 S.W.3d 371, 375 (Mo. banc 2013). The party challenging the order has the burden "to show by clear and satisfactory evidence that the determination, requirement, direction or order of the [PSC] complained of is unreasonable or unlawful." § 386.430. "The lawfulness of the PSC's order is determined by whether statutory authority for its issuance exists, and all legal issues are reviewed *de novo*." *Office of Pub. Counsel v. Mo. Pub. Serv. Comm'n* (*In re Verified Application & Petition of Liberty Energy (Midstates) Corp.*), 464 S.W.3d 520, 524 (Mo. banc 2015) (internal quotation omitted). We need not reach the issue of reasonableness if we find the PSC's order is unlawful. *Id.*

## Analysis

Neighbors United asserts two points on appeal. Neighbors United contends that the PSC erred in granting a CCN to ATXI: first, because it had not obtained

---

1. All statutory references are to the REVISED STATUTES OF MISSOURI 2000, as supplemented.

the county commission assents required by section 229.100 and 4 CSR 240–3.105(1)(D)1 before the PSC granted the CCN; and second, because the CCN approval of the siting of the transmission line on and across farming and ranching property infringes on the right of farmers and ranchers under article I, section 35 of the Missouri Constitution to engage in farming and ranching practices.

## Point I—County Assents

In the PSC's April 27, 2016 Report and Order, effective May 27, 2016, the PSC granted ATXI the certificate of convenience and necessity. However, ATXI had not obtained the assent of the county commissions of each county through which the Mark Twain Project would run as required by section 229.100. The PSC imposed a condition upon the CCN that ATXI acquire the county assents before the CCN would become effective.

 "As a creature of statute, the [PSC] only has the power granted to it by the Legislature and may only act in a manner directed by the Legislature or otherwise authorized by necessary or reasonable implication." *Mo. Pub. Serv. Comm'n v. Consol. Pub. Water Supply Dist. C–1*, 474 S.W.3d 643, 649 (Mo. App. W.D. 2015) (internal quotation omitted). "Neither convenience, expediency or necessity are proper matters for consideration in the determination of whether or not an act of the [PSC] is authorized by statute." *Id.* (internal quotation omitted). "If a power is not granted to the [PSC] by Missouri statute, then the Commission does not have that power." *Id.* (internal quotation omitted).

The PSC has the statutory authority to regulate public utilities in Missouri. § 386.250(5). It has general supervisory authority over all electrical corporations and their plants that "lay down, erect or maintain wires, pipes, conduits, ducts or other fixtures in, over or under the streets, highways and public places of any municipality, for the purpose ... of furnishing or transmitting electricity for light, heat or power." § 393.140(1).

Section 229.100 prohibits public utilities from erecting power lines in a county without first obtaining the approval of the county commission:

No person or persons, association, companies or corporations shall erect poles for the suspension of electric light, or power wires, or lay and maintain pipes, conductors, mains and conduits for any purpose whatever, through, on, under or across the public roads or highways of any county of this state, without first having obtained the assent of the county commission of such county therefor; and no poles shall be erected or such pipes, conductors, mains and conduits be laid or maintained, except under such reasonable rules and regulations as may be prescribed and promulgated by the county highway engineer, with the approval of the county commission.

Section 393.170.2 specifically states that the applicant for a CCN shall file evidence of local government consent before the PSC issues a CCN:

No such corporation shall exercise any right or privilege under any franchise hereafter granted, or under any franchise heretofore granted but not heretofore actually exercised, or the exercise of which shall have been suspended for more than one year, without first having obtained the permission and approval of the commission. *Before such certificate shall be issued a certified copy of the charter of such corporation shall be filed in the office of the commission, together with a verified statement of the president and secretary of the corporation,*

*showing that it has received the required consent of the proper municipal authorities.*

(Emphasis added.) Likewise, PSC rules provide that when an electric utility applies to the PSC for a CCN, and the consent or franchise by a county is required, as it is pursuant to section 229.100, "approval *shall* be shown by a certified copy of the document granting the consent or franchise, or an affidavit of the applicant that consent has been acquired[.]" 4 CSR 240–3.105(1)(D)1 (4/20/08) (emphasis added). "If any of the items required under this rule are unavailable at the time the application is filed, *they shall be furnished prior to the granting of the authority sought.*" 4 CSR 240–3.105(2) (emphasis added). By statute and by rule, the PSC is authorized to issue a CCN only after the applicant has submitted evidence satisfactory to the PSC that the consent or franchise has been secured by the public utility. Neither statute nor rule authorizes the PSC to issue a CCN *before* the applicant has obtained the required consent or franchise.

ATXI and the PSC argue that section 393.170.3 grants the PSC the authority to impose "reasonable and necessary" conditions on the CCN, including making the grant of the CCN contingent upon ATXI acquiring assent for the Project from the affected counties. Section 393.170.3 provides:

> The commission shall have the power to grant the permission and approval herein specified whenever it shall after due hearing determine that such construction or such exercise of the right, privilege or franchise is necessary or convenient for the public service. *The commission may by its order impose such condition or conditions as it may deem reasonable and necessary.* Unless exercised within a period of two years

from the grant thereof, authority conferred by such certificate of convenience and necessity issued by the commission shall be null and void.

(Emphasis added.)

Resolution of the issue of whether the PSC had the statutory authority to grant a conditional CCN to ATXI in this instance involves statutory interpretation. It is a fundamental rule of statutory interpretation that we ascertain the intent of the legislature by considering the words used in their plain and ordinary meaning. *Younger v. Mo. Pub. Entity Risk Mgmt. Fund*, 957 S.W.2d 332, 336 (Mo. App. W.D. 1997), *superseded by statute on other grounds as recognized by Gilley v. Mo. Pub. Entity Risk Mgmt. Fund*, 437 S.W.3d 315 (Mo. App. W.D. 2014). "A legislative act's provisions must be construed and considered together and, if possible, all provisions must be harmonized and every clause given some meaning." *Id.* (internal quotation omitted).

The *general* language of section 393.170.3 authorizes the PSC to impose "reasonable and necessary" conditions on a CCN. However, the *specific* language of section 393.170.2 states that evidence of the county commission consents "shall" be on file *before* the PSC grants a CCN. "Where one provision of a statute contains general language and another provision in the same statute contains more specific language, the general language should give way to the specific." *Id.* Under this rule, the general provision of section 393.170.3 gives way to the more specific and mandatory language of section 393.170.2, which says that the applicant "shall" file with the PSC a certified copy of the applicant's corporate charter together with "a verified statement of the president and secretary of the corporation, showing that it has received the required consent of the proper [local government] authorities."

To construe the statute otherwise would render the language of section 393.170.2 meaningless by allowing the PSC to grant a CCN without having received the required documentation. "All provisions of a statute must be harmonized and every clause must have some meaning." *Younger*, 957 S.W.2d at 337. Our harmonization of the statute preserves the integrity of both subdivisions of section 393.170 and effectuates the plain meaning of the statute. Our interpretation of the statute—that it mandates that the applicant receive the consent of local government authorities before the PSC issues a CCN—gives plain meaning to the legislature's use of the mandatory term "shall" when it describes what documents the applicant must submit to the PSC before a CCN will be issued. Accordingly, county commission assents required by section 229.100 and 4 CSR 240–3.105(1)(D)1 must be submitted to the PSC *before* the PSC grants a CCN. While section 393.170.3 grants the PSC statutory authority to impose reasonable and necessary conditions on a CCN, there is no statute authorizing the PSC to grant a preliminary or conditional CCN contingent on the required county commission consents being subsequently obtained.[2] The PSC's issuance of a CCN contingent on ATXI's subsequent provision of required county commission assents was unlawful as it exceeded the PSC's statutory authority.

Point I is granted. Our disposition of Point I renders discussion of Point II unnecessary.

---

**2.** To hold otherwise would engender the same waste of administrative and judicial time and resources as evidenced in this case. Case.net reveals that subsequent to the PSC's issuance of the CCN, each of the county commissions in the counties affected by the Project denied assent, and that ATXI has filed petitions for judicial review against each county commission. *See Ameren Transmission Co. of Ill. v.*

**Conclusion**

The PSC's Report and Order is vacated as it was entered in excess of the PSC's statutory authority.

Thomas H. Newton and Anthony Rex Gabbert, Judges, concur.

*Shelby Cty. Comm'n*, 16SB–CC00009; *Ameren Transmission Co. of Ill. v. Schuyler Cty. Comm'n*, 16SY–CV00145; *Ameren Transmission Co. of Ill. v. Marion Cty. Comm'n*, 16MM–CV00182; *Ameren Transmission Co. of Ill. v. Knox Cty. Comm'n*, 16KN–CC00051; *Ameren Transmission Co. of Ill. v. Adair Cty. Comm'n*, 16AR–CV00790.