PER CURIAM
*470 Grain Belt Express Clean Line, LLC ("Grain Belt"), seeks to construct a complex, interstate electrical transmission line and associated facilities. It applied to the Missouri Public Service Commission ("Commission") for a line certificate of convenience and necessity ("CCN") pursuant to section 393.170.1.[1] The Commission denied the application for a line CCN, relying on In re Ameren Transmission Co. of Illinois (ATXI ), 523 S.W.3d 21 (Mo. App. 2017), which purports to require prior consent from each county affected by the proposed construction. The question to be resolved in this case is whether consent is required from would-be affected counties before the Commission can issue a line CCN.
The statute governing line CCNs, section 393.170.1, does not require prior consent from affected counties. Consent is required, however, from affected counties when the utility applies for an area CCN under section 393.170.2. That subsection sets out the procedure for area CCN applications when a utility is seeking to provide retail service. Because Grain Belt has applied for a line CCN rather than an area CCN, it does not need to obtain prior county consent.
In addition, when publicly owned county roads are impacted, assent is also required under section 229.100 from those counties before construction may begin. Although the provisions in that section are not relevant to the Commission's decision in issuing a line CCN, Grain Belt acknowledges it will be required to obtain county assent pursuant to section 229.100 if it intends to construct utilities impacting publicly owned roads.
The Commission's reliance on ATXI was error. To the extent ATXI suggests consent from every would-be affected county is required before the Commission can grant a line CCN, it should not be followed. Accordingly, the Commission's order denying Grain Belt's application for a line CCN pursuant to section 393.170.1 is reversed, and the case is remanded to the Commission to determine whether Grain Belt's proposed utility project is necessary or convenient for the public service.
Factual and Procedural Background
Grain Belt filed an application for a line CCN with the Commission pursuant to section 393.170.1, 4 CSR 240-2.060, and 4 CSR 240-3.105(1)(B). The application sought the Commission's approval of Grain Belt's proposed construction of an interstate electrical transmission line, which would move wind-generated energy from western Kansas to Missouri and other states farther east. The overhead, multi-terminal line would cross 206 miles through the following eight Missouri counties: Buchanan, Caldwell, Carroll, Chariton, Clinton, Monroe, Randolph, and Ralls.
*471 The Commission's report and order denied Grain Belt's application for a line CCN, concluding it was bound by the court of appeals decision in ATXI . Because ATXI had held that the Commission could not lawfully grant a CCN without consent from each county affected by a project pursuant to section 393.170.2 and section 229.100, the Commission concluded it could not lawfully grant a CCN to Grain Belt until it submitted evidence of county assent pursuant to section 229.100. Four of the five commissioners joined in a concurring opinion, stating they disagreed with ATXI and would have voted otherwise to grant Grain Belt's application, but they believed they were bound by its holding.
Grain Belt and the Missouri Joint Municipal Electric Utility Commission ("MJMEUC") appeal the Commission's report and order. Although the Missouri Landowner's Alliance ("MLA") prevailed before the Commission, it files a separate appeal. After issuing an opinion, the court of appeals transferred the case to this Court on its own motion under Rule 83.02 due to the general interest and importance of the issue presented. This Court has jurisdiction pursuant to article V, section 10 of the Missouri Constitution.
Standard of Review
Pursuant to section 386.510, appellate review of an order by the Commission is two-pronged: "first, the reviewing court must determine whether the [Commission's] order is lawful; and second, the court must determine whether the order is reasonable." State ex rel. AG Processing, Inc. v. Pub. Serv. Comm'n of State , 120 S.W.3d 732, 734 (Mo. banc 2003). The Commission's order is presumed valid, and the burden of showing the order is unlawful or unreasonable rests with the appellant. In re Mo.-Am. Water Co. , 516 S.W.3d 823, 827 (Mo. banc 2017). All questions of law are reviewed de novo. Id.
Analysis
I. The Legislature Has Provided Two Types of CCNs
Grain Belt argues the Commission erred in denying its application for a line CCN based on ATXI . Before addressing this argument, a review of the statute creating CCNs is helpful. Section 393.170 sets out two types of CCNs the Commission may grant a utility. These types are provided for in separate subsections of section 393.170 and are commonly referred to as "line certificates" and "area certificates." See, e.g. , State ex rel. Cass Cty. v. Pub. Serv. Comm'n , 259 S.W.3d 544, 548-49 (Mo. App. 2008). Section 393.170.1 grants the Commission the authority to issue a line CCN to a utility to construct electrical plants. Subsection 1 provides:
No gas corporation, electrical corporation, water corporation or sewer corporation shall begin construction of a gas plant, electric plant, water system or sewer system without first having obtained the permission and approval of the commission.
Sec. 393.170.1. The Commission's grant of a line CCN does not require prior consent from affected counties.
Section 393.170.2 grants the Commission the authority to issue an area CCN for the utility to exercise a franchise and provide retail utility service to a geographic territory. See, e.g. , Cass Cty. , 259 S.W.3d at 549. Subsection 2 provides:
No such corporation shall exercise any right or privilege under any franchise hereafter granted, or under any franchise heretofore granted but not heretofore actually exercised, or the exercise of which shall have been suspended for more than one year, without first having *472 obtained the permission and approval of the commission. Before such certificate shall be issued a certified copy of the charter of such corporation shall be filed in the office of the commission, together with a verified statement of the president and secretary of the corporation, showing that it has received the required consent of the proper municipal authorities.
Sec. 393.170.2 (emphasis added). Subsection 2 requires prior consent from would-be affected counties before the Commission can grant approval.
The legislature's intent to distinguish between the two types of CCNs is further evidenced in subsection 3 of the statute, promulgated regulations, and case law. Section 393.170.3 uses the disjunctive "or" when referencing the Commission's power to grant a line or area CCN. Subsection 3 provides, in relevant part, "The commission shall have the power to grant the permission and approval herein specified whenever it shall after due hearing determine that such construction or such exercise of the right, privilege or franchise is necessary or convenient for the public service." Sec. 393.170.3 (emphasis added).
In addition, the distinction between the two types of CCNs provided for in subsections 1 and 2 of 393.170 is apparent in the different filing requirements as found in rules promulgated by the Commission. 4 CSR 240-2.060 contains the general requirements for applications to the Commission. These requirements, however, are qualified by 4 CSR 240-3.105, which contains the specific filing requirements for CCN applications. 4 CSR 240-3.105(1)(A) sets forth the requirements for an area CCN application under section 393.170.2. 4 CSR 240-3.105(1)(B), on the other hand, contains separate filing requirements for a line CCN application under section 393.170.1.[2]
Case law also has repeatedly recognized section 393.170 as providing for two types of CCNs. See, e.g. , Cass Cty. , 259 S.W.3d at 548-49 ("The permission and approval that may be granted pursuant to section 393.170 is of two types: [The Commission] may grant CCNs for the construction of power plants, as described in subsection 1, or for the exercise of rights and privileges under a franchise, as described in subsection 2."); StopAquila.Org v. Aquila, Inc. , 180 S.W.3d 24, 33 (Mo. App. 2005) (noting there is a difference between the Commission's grant of authority to construct utility lines and the Commission's grant of authority to service a territory); State ex rel. Union Elec. Co. v. Pub. Serv. Comm'n of State of Mo. , 770 S.W.2d 283, 285-86 (Mo. App. 1989) ("Two types of certificate authority are contemplated in [section 393.170]."); State ex rel. Harline v. Pub. Serv. Comm'n of Mo. , 343 S.W.2d 177, 185 (Mo. App. 1960) ("Certificate 'authority' is of two kinds and emanates from two classified sources. Sub-section 1 requires 'authority' to construct an electric plant. Sub-section 2 requires 'authority' for an established company to serve a territory by means of an existing plant.").
The Commission erred in holding that prior county consent was necessary before it could approve Grain Belt's application for a line CCN by erroneously analyzing this case under the area CCN subsection.
II. The Commission's Reliance onATXI was in Error
The Commission's decision to deny the line CCN because it found ATXI controlling *473 was also error. In ATXI , the Commission issued a "conditional" report and order granting Ameren Transmission Company of Illinois ("Ameren") a CCN to construct a long-distance electric transmission line. 523 S.W.3d at 23. The CCN, however, was contingent upon Ameren receiving the required assents of each county affected by the project as required by section 229.100. Id. Section 229.100 requires any entity intending to construct utilities impacting publicly owned roads to first obtain assent from the county where the roads are located before construction may begin. ATXI held that the Commission did not have the statutory authority to issue a "conditional" CCN because, according to section 393.170.2 and 4 CSR 240-3.105(1)(D)1, a utility seeking a CCN must obtain consent from would-be affected counties before the Commission can grant a CCN. Id.
It was not clear, however, whether Ameren's CCN application was seeking a line CCN or an area CCN. Ameren's application stated it was seeking a CCN pursuant to section 393.170 and 4 CSR 240-3.105 without specifying under which subsection of the statute and regulation it was applying.[3]
Section 393.170.2, which concerns area CCNs, was the only subsection of the statute analyzed in ATXI . "[T]he specific language of section 393.170.2 states that evidence of the county commission consents 'shall' be on file before the PSC grants a CCN."[4] 523 S.W.3d at 26. The court of appeals did not acknowledge section 393.170.1 does not require preliminary county consent for line CCNs. In fact, ATXI does not cite section 393.170.1 at all. By failing to consider subsection 1, ATXI can be read to conflate the provisions in subsection 1 with those in subsection 2. ATXI 's failure to distinguish between line CCNs in subsection 1 and area CCNs in subsection 2 resulted in the Commission's issuance of either type of CCN being contingent on the utility's receiving local approval. Such an incorrect interpretation renders the use of the disjunctive "or" in subsection 3 meaningless. This Court cannot ignore words in a statute and must give meaning to every word used. State v. Moore , 303 S.W.3d 515, 520 (Mo. banc 2010).
Section 393.170 clearly provides for two types of CCNs and explicitly requires prior consent from would-be affected counties to obtain one type of CCN, an area CCN, but not the other, a line CCN. To the extent ATXI requires consent from every would-be affected county before the Commission can grant a line CCN, it should not be followed.
In this case, Grain Belt has applied for a line CCN under section 393.170.1. It has *474 not applied for an area CCN under section 393.170.2 because, according to Grain Belt, it will not be providing retail service to electric consumers. Accordingly, it was not required to obtain consents from the affected counties before the Commission could issue a line CCN.
Further, Grain Belt acknowledges it will be required to obtain county assent pursuant to section 229.100 if it intends to construct utilities impacting publicly owned roads. The provisions in that section, however, are not relevant to the Commission's decision-making process in issuing a line CCN. Section 229.100 does not purport to give counties the authority to stand in the shoes of the Commission in determining whether a proposed utility project is in the public interest of the state or whether a utility should be granted a CCN. Other than providing that county assent must be obtained prior to beginning construction when county roads are impacted, section 229.100 is silent as to timing, order of priority, or any other reference to section 393.170 covering the Commission's authority to issue CCNs. The Commission erred in relying on ATXI in denying Grain Belt's application based on its failure to first obtain assent from impacted counties. Admittedly, Grain Belt will need to obtain such assent before it can begin construction if county roads will be impacted, but county assent is not required prior to the Commission issuing a line CCN.
Conclusion
The Commission erroneously concluded it could not lawfully grant a line CCN to Grain Belt without the utility first obtaining consent from the affected counties. Such consent is not required before obtaining a line CCN pursuant to section 393.170.1. Consent is required if the utility is seeking an area CCN pursuant to section 393.170.2, but it was clear under the facts in the instant case that an area CCN was not requested. Grain Belt acknowledges it ultimately will need county assent pursuant to section 229.100 if it intends to construct utilities impacting publicly owned roads, but such assent is not relevant to the Commission's decision in issuing a line CCN. Consequently, the Commission's order denying Grain Belt's application for a line CCN is reversed, and the case is remanded to the Commission to determine whether Grain Belt's proposed utility project is necessary or convenient for the public service.[5]
All concur.

All statutory references are to RSMo 2016, unless otherwise indicated.

Specifically, 4 CSR 240-3.105 provides a set of filing requirements "[i]f the application is for a service area ," 4 CSR 240-3.105(1)(A) (emphasis added), and a separate set of filing requirements "[i]f the application is for electrical transmission lines, gas transmission lines or electrical production facilities ," 4 CSR 240-3.105(1)(B) (emphasis added).

Ameren's application followed the provisions of 4 CSR 240-3.105(1)(B), which is the application for a "line certificate." It also stated it neither provided retail electric service to the general public in Missouri nor served any retail service territory in Missouri. Ameren's application also requested Commission approval to construct utility lines (indicative of a line CCN) rather than exercise a franchise (indicative of an area CCN). Yet the application also indicated factors contemplating an area CCN pursuant to section 393.170.2. The application stated the proposed project would provide benefits for Missouri customers by reducing transmission charges to Ameren Missouri by improving the overall reliability of the regional transmission system and reducing transmission system congestion. Further, the application stated it would seek approval or waivers from the appropriate authorities prior to the grant of the CCN. Both of these statements contemplate an area CCN pursuant to section 393.170.2.

The Commission's rules also clearly provide when consent to a project is required, it must be received prior to the issuance of a CCN. 4 CSR 240-3.105(2).

MJMEUC and MLA's briefs assert several points on appeal. The Commission filed a motion to dismiss MLA's appeal, which was taken with the case. Because this Court's review of Grain Belt's points on appeal is dispositive, this Court does not reach the claims raised by MJMEUC or MLA. Consequently, the Commission's motion to dismiss MLA's appeal is overruled as moot.