

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

GRAIN BELT EXPRESS, L.L.C., )
                         )
       **Respondent,** )
                         )
**v.** )           **WD86613**
                         )
**CHARITON COUNTY, MISSOURI,** )       **Filed:  October 15, 2024**
                         )
       **Appellant.** )

## APPEAL FROM THE CIRCUIT COURT OF CHARITON COUNTY
### THE HONORABLE DAREN L. ADKINS, JUDGE

### BEFORE DIVISION THREE: THOMAS N. CHAPMAN, PRESIDING JUDGE, LISA WHITE HARDWICK, JUDGE, AND ALOK AHUJA, JUDGE

Chariton County appeals from the circuit court's judgment declaring that Section 49.650.4[1] prohibits it from doing anything that would "govern" Grain Belt Express, LLC ("Grain Belt"), including taking any county action that would regulate the construction of overhead transmission lines on public roads.  Chariton County contends the court erroneously interpreted Section 49.650.4 and its relationship to Section 229.100, which requires corporations to obtain the assent of a county commission before erecting poles

---

[1] All statutory references are to the Revised Statutes of Missouri 2016, unless otherwise indicated.

for the suspension of electric light or power wires on public roads. For reasons explained herein, the judgment is reversed, in part, and affirmed, in part, as modified pursuant to Rule 84.14.

## FACTUAL AND PROCEDURAL HISTORY

The parties stipulated to the following facts. Grain Belt is an electrical corporation and public utility under Section 386.020(15) and (43), regulated by the Missouri Public Service Commission ("MPSC"). Chariton County is a political subdivision of the State of Missouri and a third-class county under Section 48.020. Grain Belt intends to construct and maintain an overhead, high-voltage transmission line and associated facilities commonly referred to as the Grain Belt Express Project ("the Project"), which would transmit wind-generated energy from western Kansas to Missouri and other states farther east through several Missouri counties, including Chariton County.

In July 2012, Chariton County, through its County Commission, gave its assent for Grain Belt "to construct, erect, place, maintain, own and operate poles, lines, and other conduits, conductors and associated structures and equipment for utility purposes through, along, across, under and over the public roads and highways of the County" pursuant to Section 229.100. In March 2014, however, the Chariton County Commission rescinded this assent "until utility status has been approved by the [MPSC]." The County Commission sent a letter to this effect to the MPSC, explaining that it had been premature in its 2012 support and listing several concerns Chariton County's citizens had about the impact of the high voltage lines on their livelihood, health, economy, future land use, and the aesthetic beauty of the area.

2

In 2016, Grain Belt formally applied to the MPSC for a certificate of convenience and necessity ("CCN") for the Project. In March 2019, the MPSC issued a Report and Order on Remand determining the Project is necessary or convenient for the public service and in the public interest, and granting Grain Belt's requested CCN. Additionally, the Report and Order on Remand approved the final proposed route of the Project as the "best route to minimize the overall effect of the Project on the natural and human environment while avoiding unreasonable and circuitous routes, unreasonable costs, and special design requirements." The Report and Order on Remand required Grain Belt to adhere to the final proposed route as a condition of the CCN, with allowances for minor deviations. This court affirmed the MPSC's Report and Order on Remand in *Missouri Landowners Alliance v. Public Service Commission*, 593 S.W.3d 632 (Mo. App. 2019).

Between June 2021 and April 2022, Grain Belt engaged in negotiations with the County Commission with the goal of obtaining its assent to the Project. The County Commission did not give its assent, and a motion to execute the road maintenance and use agreement Grain Belt had been negotiating with the County Commission failed for lack of a second to the motion. The County Commission made it clear the road maintenance and use agreement would not be executed.

Grain Belt filed a petition, which it later amended, against Chariton County in May 2022. In its amended petition, Grain Belt alleged it could not move forward with the Project absent the County Commission's grant of an assent under Section 229.100, despite having already obtained approval for the Project from the MPSC and the Federal

3

Energy Regulatory Commission.  In Count I, Grain Belt sought a judgment declaring:  (1) the refusal to grant an assent to Grain Belt exceeded the County Commission's jurisdiction under Section 229.100; (2) Chariton County's conditioning of the assent on Grain Belt's execution of a road use agreement exceeded the County Commission's jurisdiction under Section 229.100; and (3) Section 229.100 cannot be used by the County Commission to prevent the Project from moving forward.  In the alternative, Grain Belt requested a writ of mandamus in Count II and a writ of certiorari in Count III compelling the County Commission to grant an assent to it to erect poles for light or power wires through, on, under, or across Chariton County's public roads or highways, consistent with the CCN that the MPSC granted to Grain Belt.

After Chariton County filed an answer, the parties filed pretrial stipulated facts and trial briefs.  Trial was held in May 2023.  At trial, the parties moved for the admission of certain exhibits by stipulation, made arguments as to whether certain other exhibits should be admitted, and made legal arguments regarding the issues in the case. The court subsequently entered judgment in favor of Grain Belt on Count I of its amended petition, declaring that, pursuant to Section 49.650.4, Chariton County is prohibited from taking any action, adopting any ordinance, resolution, or regulation governing Grain Belt, including taking any action that regulates the construction of overhead transmission lines pursuant to Section 229.100.  The court further denied as moot Counts II and III of the amended petition.  Chariton County filed a motion to reconsider, amend, or set aside, which the court denied after a hearing.  Chariton County appeals.

4

The standard of review in a declaratory judgment case is the same as in any other court-tried case. *Kerperien v. Lumberman's Mut. Cas. Co.*, 100 S.W.3d 778, 780 (Mo. banc 2003). We will affirm the decision unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id*. (citing *Murphy v. Carron*, 536 S.W.3d 30, 32 (Mo. banc 1976)).

## ANALYSIS

Chariton County's three points on appeal challenge the circuit court's interpretation of Sections 229.100 and 49.650.4, and the court's reliance on principles enunciated in *Cedar County Commission v. Parson*, 661 S.W.3d 766 (Mo. banc 2023), in harmonizing the two statutes. We will address all three points together.

We review the circuit court's interpretation and application of statutes *de novo*. *Dixon v. Mo. State Highway Patrol*, 583 S.W.3d 521, 523 (Mo. App. 2019). In interpreting statutes, we are "to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words in their plain and ordinary meaning." *Id*. at 523-24 (quoting *State ex rel. Hillman v. Beger*, 566 S.W.3d 600, 604-05 (Mo. banc 2019)). When the statutory language is clear and unambiguous, "there is no room for statutory construction." *Jones v. Dir. of Revenue*, 832 S.W.2d 516, 517 (Mo. banc 1992).

Section 229.100, enacted in 1939, provides:

> No person or persons, association, companies or corporations shall erect poles for the suspension of electric light, or power wires, or lay and maintain pipes, conductors, mains and conduits for any purpose whatever,

through, on, under or across the public roads or highways of any county of this state, without first having obtained the assent of the county commission of such county therefor; and no poles shall be erected or such pipes, conductors, mains and conduits be laid or maintained, except under such reasonable rules and regulations as may be prescribed and promulgated by the county highway engineer, with the approval of the county commission.[2]

Courts have acknowledged this language requires a utility company to obtain a county's assent if it intends to construct utility infrastructure that will impact publicly owned roads. *See Grain Belt Express Clean Line, LLC v. Public Service Commission,* 555 S.W.3d 469, 474 (Mo. banc 2018) (noting multiple times, in a prior appeal to the Missouri Supreme Court concerning this Project, that Grain Belt would need to obtain the affected counties' Section 229.100 assents before it could begin construction if county public roads would be impacted by the Project).[3] An "assent" is defined as "an act of agreeing to something especially after thoughtful consideration . . . ACQUIESCENCE, AGREEMENT."[4]

The other statute at issue is found in Section 49.650, enacted in 2004, which gives non-charter counties "the power to adopt ordinances or resolutions relating to its

---

[2] Chariton County does not have rules or regulations promulgated by a county highway engineer.

[3] *See also Mo. Landowners All. v. Grain Belt Express Clean Line LLC*, 561 S.W.3d 39, 41 (Mo. App. 2018) (addressing whether statute of limitations barred claims that Monroe County's Section 229.100 assent to the Project violated the Sunshine Law); *Mo. Pub. Serv. Co. v. Platte-Clay Elec. Co-op., Inc.*, 407 S.W.2d 883, 889 (Mo. 1966) (acknowledging Section 229.100's predecessor, Section 7924, RSMo 1929, required a utility company to obtain the assent of the county court before poles for electric light wires could be erected on a county's public roads and highways).

[4] *Assent*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://merriamwebster.com/dictionary/assent (last visited September 17, 2024).

property, affairs, and local government for which no provision has been made in the constitution of this state or state statute regarding" several matters, including "[c]ounty roads controlled by the county." § 49.650.1(1). The specific subsection at issue in this case is subsection 4, which provides:

> No county of the first, second, third, or fourth classification shall have the power to adopt any ordinance, resolution, or regulation pursuant to this section governing any railroad company, telecommunications or wireless companies, public utilities, rural electric cooperatives, or municipal utilities.

§ 49.650.4. Looking at the plain and ordinary meaning of the three types of actions Section 49.650.4 prohibits the counties from adopting, an "ordinance" is "a law set forth by a governmental authority";[5] a "resolution" is "a formal expression of opinion, will, or intent voted by an official body or assembled group";[6] and a "regulation" is "a rule or order issued by an executive authority or regulatory agency of a government and having the force of law."[7] The dictionary definition of "govern," is "to control, direct, or strongly influence the actions and conduct of," "to exert a determining or guiding influence in or over," and "to hold in check: RESTRAIN."[8] Applying these definitions, Section 49.650.4 limits the power granted in Section 49.650.1 to a non-charter county

---

[5] *Ordinance*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://merriamwebster.com/dictionary/ordinance (last visited September 17, 2024).

[6] *Resolution*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://merriamwebster.com/dictionary/resolution (last visited September 17, 2024).

[7] *Regulation*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://merriamwebster.com/dictionary/regulation (last visited September 17, 2024).

[8] *Govern*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://merriamwebster.com/dictionary/govern (last visited September 17, 2024).

like Chariton County by prohibiting the county from adopting any law, formal expression of its will or intent, rule, or order pursuant to Section 49.650 regarding county roads that controls, directs, or restrains a public utility like Grain Belt.

Both Sections 229.100 and 49.650.4 concern the scope of Chariton County's authority with respect to Grain Belt's overhead transmission lines across county roads. In its judgment, the circuit court determined any conflict between Sections 229.100 and 49.650.4 could be reconciled by interpreting the statutes consistently with principles articulated in *Cedar County Commission v. Parson*, 661 S.W.3d 766 (Mo. banc 2023).

The issue before the Missouri Supreme Court in *Cedar County Commission* was the authority of counties to enact ordinances and regulations imposing air and water quality standards on controlled animal feeding operations, or CAFOs, in light of Section 192.300.1(2), RSMo Cum. Supp. 2021. The 2021 version, which was passed after the counties' ordinances and regulations were enacted, prohibited counties from enacting public health ordinances that "impose standards or requirements on an agricultural operation and its appurtenances . . . that are *inconsistent with, in addition to, different from, or more stringent than* any provision of [chapter 192] or chapters 250, 640, 643, or 644, or any rule or regulation promulgated under such chapters." *Cedar Cty. Comm'n*, 661 S.W.3d at 770 (quoting § 192.300.1(2), RSMo Cum. Supp. 2021).

To support its holding that the counties' CAFO ordinances and regulations were void because they were inconsistent with Section 192.300.1(2), RSMo Cum. Supp. 2021, the Supreme Court discussed the power and authority of counties. Specifically, the Court explained that "Article VI, section 7 of the Missouri Constitution 'gives county

8

commissions the power to manage all county business *as prescribed by law*.'" *Cedar Cty. Comm'n*, 661 S.W.3d at 772 (quoting Mo. Const. art. VI, § 7). "Accordingly, counties have no inherent powers but are confined to those expressly delegated by the sovereign and to those powers necessarily implied in the authority to carry out the delegated powers." *Id*. (internal quotation marks and citation omitted). Counties must exercise these powers "in a manner not contrary to the public policy of the state and any provisions *in conflict with prior or subsequent state statutes must yield*." *Id*. at 775 (internal quotation marks and citation omitted). "Consequently, when a local government steps out of these boundaries, or the state expressly prohibits them from acting, their acts are void." *Id*. (citations omitted).

Applying these principles from *Cedar County Commission* to this case, the circuit court concluded the assent requirement in the earlier-enacted statute, Section 229.100, was limited by the prohibition against governing utilities contained in the later-enacted statute, Section 49.650.4. In its judgment, the circuit court found that, while the legislature granted the county commission the authority to provide or withhold its assent to suspend power lines across the county's public roads when it enacted Section 229.100 in 1939, the legislature limited that authority in 2004 when it enacted Section 49.650.4's prohibition against a county doing anything that would "govern" public utilities. The court found that the prohibition against governing included prohibiting Chariton County from taking any action that would regulate the construction of overhead transmission lines pursuant to Section 229.100.

In doing so, the circuit court essentially deemed that Section 49.650.4 repealed Section 229.100's assent requirement by implication, as there is no language in Section 49.650.4 that expressly references Section 229.100.[9] Repeals by implication, however, are disfavored. *Turner v. Sch. Dist. of Clayton*, 318 S.W.3d 660, 667 (Mo. banc 2010). "If by any fair interpretation both statutes may stand, there is no repeal by implication and both statutes must be given their effect." *Id.* (citation omitted). "When two provisions are not irreconcilably inconsistent, both must stand even if 'some tension' exists between them." *Id.* (citation omitted).

Sections 229.100 and 49.650.4 are not irreconcilably inconsistent. Section 49.650.4 limits only the authority granted in Section 49.650, prohibiting counties from taking actions "pursuant to this section" governing electric utilities. Section 49.650.4 says nothing about limiting the authority granted to counties in other statutes. Section 229.100 concerns the construction of the utility's infrastructure across county roads, as it requires a county commission's assent before the utility company "shall *erect* poles for the suspension of electric light or power wires, or *lay and maintain* pipes, conductors, mains and conduits," and it requires that the poles be erected and the pipes and conduits be laid or maintained pursuant to the county highway engineer's rules and regulations. (Emphasis added). That the language of the statute focuses on the construction of the utility's infrastructure and requires that the infrastructure be constructed pursuant to

---

[9] In contrast, the later-enacted statute in *Cedar County Commission*, Section 192.300.1(2), RSMo Cum. Supp. 2021, expressly stated counties were prohibited from enacting public health ordinances that imposed standards or requirements that were inconsistent with specific chapters.

10

"rules and regulations as may be prescribed and promulgated by the county highway engineer" indicates the legislature intended to give the county, through the assent requirement, the power to ensure the construction does not interfere with the safety and use of the county's public roads.[10]  Thus, a fair interpretation is that Section 229.100 requires a county commission's agreement regarding *how* a utility's infrastructure will be constructed across the county's public roads, not *whether* such utility's infrastructure will be constructed across the county's public roads in the first place.

The decision as to whether Grain Belt's overhead transmission lines for the Project would be constructed across Chariton County's public roads was already made by the MPSC when it issued its Report and Order on Remand granting the CCN and approving the final proposed route of the Project.  The creation of the MPSC and the enactment of statutes giving the MPSC "sweeping" powers of supervision and regulation over utility companies constitute "a legislative recognition that the public interest in proper regulation of public utilities transcends municipal or county lines, and that a centralized control must be entrusted to an agency whose continually developing expertise will assure uniformly safe, proper and adequate service by utilities throughout the state." *Union Elec. Co. v. City of Crestwood*, 499 S.W.2d 480, 482-83 (Mo. 1973) (citation omitted).  Chariton County cannot use the limited power given to it in Section 229.100 – to reach an agreement with Grain Belt on the manner in which the overhead transmission lines are constructed to ensure the safety and use of the county's public roads – to

---

[10] Pursuant to Section 61.240, one of the general duties of the county highway engineer is to inspect the county's roads "as often as practicable" for any "bad or dangerous condition."

circumvent the MPSC's decision that the overhead transmission lines will be constructed across Chariton County's public roads. Doing so usurps the authority granted the MPSC in Chapter 386 and exercises a power granted to the county in a manner contrary to the public policy of this state, *Cedar County Commission*, 661 S.W.3d at 775. Indeed, the Supreme Court stated as much in *Grain Belt*, 555 S.W.3d at 474:

> Grain Belt acknowledges it will be required to obtain county assent pursuant to section 229.100 if it intends to construct utilities impacting publicly owned roads. *The provisions in that section, however, are not relevant to the [MPSC]'s decision-making process in issuing a line CCN. Section 229.100 does not purport to give counties the authority to stand in the shoes of the [MPSC] in determining whether a proposed utility project is in the public interest of the state or whether a utility should be granted a CCN.* Other than providing that county assent must be obtained prior to beginning construction when county roads are impacted, section 229.100 is silent as to timing, order of priority, or any other reference to section 393.170 covering the [MPSC]'s authority to issue CCNs.

(Emphasis added.)

We must assume when the legislature enacted Section 49.650.4, it was aware of Section 229.100's assent requirement. *Turner*, 318 S.W.3d at 667. If the legislature intended to repeal Section 229.100's assent requirement, it could have easily done so. *See id*. at 668. It did not. Any inconsistency between the two statutes can be reconciled by distinguishing the authority of the county addressed in each statute. A fair interpretation of Section 229.100 is that it gives Chariton County the authority to reach an agreement with Grain Belt for the manner in which Grain Belt's overhead transmission lines are constructed for the purpose of ensuring the safety and use of the county roads. A fair interpretation of Section 49.650.4 is that it prohibits Chariton County from refusing to reach an agreement with Grain Belt under Section 229.100 for the purpose of

12

preventing Grain Belt from constructing the overhead transmission lines over the county's public roads.

To the extent the circuit court's judgment does not require Grain Belt to obtain Chariton County's assent under Section 229.100, that portion of the judgment is reversed. Pursuant to Rule 84.14,[11] we declare Grain Belt is required to obtain Chariton County's Section 229.100 assent to the manner in which the overhead transmission lines are constructed to ensure the safety and use of the county's public roads. We affirm the portion of the circuit court's judgment declaring Chariton County is prohibited under Section 49.650.4 from taking any action, including withholding its Section 229.100 assent, to prevent Grain Belt from constructing the overhead transmission lines on the country's public roads per the route approved by the MPSC.

## CONCLUSION

The judgment is reversed in part, and affirmed, in part, as modified pursuant to Rule 84.14.

_____
LISA WHITE HARDWICK, JUDGE

All Concur.

---

[11] Rule 84.14 gives appellate courts the authority to "give such judgment as the court ought to give."